(December 1, 1900.)

## MALE v. LEFLANG.

[63 Pac. 108.]

DITCH AND WATER RIGHT—MORTGAGE—AGREEMENT TO CANCEL MORTGAGE BY DEED WITH RIGHT TO ENLARGE DITCH.—The defendants having purchased a tract of land, together with a certain ditch and water rights upon which plaintiffs held a mortgage, default being made in the payments secured by the mortgage, the attorney of plaintiffs, to avoid delay and expense of foreclosure, agreed with the defendants if they would convey the title to said property to plaintiffs, he, the agent, would give them the right to enlarge the said ditch, so as bring the water to the tract of land subsequently purchased by the defendants, and through which said ditch ran and to take water therefrom for the purpose of irrigating such land. Defendants, having executed the deed, proceeded to enlarge said ditch and utilize said water as agreed. In an action by plaintiffs to enjoin defendants from using said ditch or water, *held,* that under the provisions of section 6008 of the

Revised Statutes, the defendants were entitled to enlarge said ditch and utilize said waters as agreed. Case of *McGinnis v. Stanfield*, 55 Pac. 1020, distinguished.

(Syllabus by the court.)

APPEAL from District Court, Blaine County.

L. L. Sullivan, for Appellants, cites no authorities upon the point decided.

P. M. Bruner, for Respondents.

This is an attempt on the part of appellants to obtain real property upon an alleged oral agreement. The ditch and right of way in controversy is real property. Real property cannot be conveyed otherwise than by operation of law or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereto authorized by writing. (Idaho Rev. Stats., sec. 6007; *McGinness v. Stanfield*, 6 Idaho, 372, 55 Pac. 1020.) Where the evidence and circumstances surrounding a case tend to prove the existence of a given fact or state of facts, and have been passed upon by a jury in a civil suit, their findings, unless set aside by the trial judge or appellate court, are conclusive upon the supreme court, and it is wholly immaterial whether that court thinks such findings are in accordance with the weight of evidence or not. (*Illinois Cent. Ry. Co. v. Haskins*, 115 Ill. 300, 2 N. E. 654; *McCarty v. Boise City Canal Co.*, 2 Idaho, 245, 10 Pac. 623; *Childs v. Lauterman*, 30 Cal. 553.) Where there is a conflict of evidence in a case, and the jury give credit to the witnesses on one side rather than to those on the other, their verdict upon the issue is conclusive. (*Nichols, Shepard & Co. v. Shafer*, 63 Mich. 599, 30 N. W. 383; *O'Connor v. Langdon*, 3 Idaho, 61, 26 Pac. 659; *McCarty v. Boise City*, 2 Idaho, 245, 10 Pac. 623; *Chamberlain v. Woodin*, 2 Idaho, 642, 23 Pac. 177.)

HUSTON, C. J.—This is an action brought by plaintiffs against defendants to enjoin them from taking water from or interfering with a certain ditch located in Blaine county, and taking water from Big Wood river, and for damages. The facts,

as they appear in the record, are substantially as follows: One Yager, being the owner of a certain tract of land described in the complaint as now being owned by the plaintiff Male, being four hundred acres, mortgaged the same to said Male, or the New York Loan and Trust Company, or both together, with his interest—being two-thirds,—in the ditch conveying water onto said land from Big Wood river. Yager, subsequently to the making of the mortgage, but whether after or before default was made does not appear, sold the property to defendants. Default having been made in the payments secured by the mortgage, proceedings were, or were about to be, commenced to foreclose the same. Defendants having purchased a tract of land lying above the tract purchased by them of Yager, and upon and along the same ditch, and being unable to pay the mortgage, one P. M. Bruner acting as the attorney of the mortgagees made a proposal to defendants, to deed the property to the mortgagees or to Male. There is considerable conflict in the testimony as to the nature and terms of the agreement resulting from this proposal. The defendants both testify that they positively refused to sign the deed required by Bruner, unless he would give them the right to enlarge the ditch so as to carry two hundred inches more water, and that it was upon this consideration, and this only, that they signed the deed; and in this contention the defendants seem to be quite fully sustained by Leon Fuld, the notary public whom Bruner had taken with him to take the acknowledgment of the deed from the defendants. Bruner insists that he only agreed to use his influence with said mortgagees to secure such right to the defendants, and that he told defendants, as an inducement to them to make the deed, that if, as defendants claimed, the land was worth little or nothing, then "we [the mortgagees meaning] would certainly have a deficiency judgment docketed up against you" (the defendants meaning). Just how Mr. Bruner was going to manage to get a deficiency judgment against the defendants, who were not parties to either the note or mortgage, but simply purchasers of the legal title, is not entirely clear. It must not be overlooked that at the time this right to enlarge the ditch is alleged by the defendants to have been given, the defendants held the title to both the land and the

ditch. And we think the weight of the evidence is in favor of the contention of the defendants, that the signing of the deed conveying the title to Male was the consideration they paid for the right to enlarge the ditch and convey water through the same. Certainly, the granting of the right could in no way injure the plaintiffs. Their land was situate below that of defendants, and it was not intended by defendants to interfere with the ditch upon the land of plaintiffs. The supply of water from Big Wood river appears to be abundant for both. To deprive defendants of the water, without the use of which their land would be valueless, would, it seems to us, under the circumstances developed by the record, be most inequitable and unjust. Mr. Bruner himself says he sees no good reason why the right should not be given to defendants, provided they enlarge the ditch; but he avers they have not done so. Upon this latter question the testimony is conflicting. We have examined it with much care. Some of the witnesses evince a degree of animosity against the defendants not entirely consistent with a desire to aid in meting out that "even-handed justice" which is so desirable and commendable. We are inclined to take the testimony of the witness Frank Mandel as the most convincing and satisfactory upon this question. He is evidently unprejudiced and fair-minded, is thoroughly competent to testify upon the subject; more so, doubtless, than any other witness who testified upon the question. He is a civil engineer by profession, is county surveyor, and he says: "I have measured the amount of water flowing in that ditch. I measured the water at a point about a quarter of a mile above the Leflang house in the field on the fifth day of July, 1899 and found that there were three hundred and fifty miners' inches in the ditch. The ditch would carry over five hundred inches of water at that point, I figured. At the time I measured the water line showed that the water had been two inches deeper a short time before; and that would make (in the same proportion that I found there)—would make the quantity of water equal to five hundred miners' inches (ten cubic feet) per second. The ditch would carry five hundred inches of water to the upper end of Leflang's field." The facts in this case, as they are shown by the record, bring it

clearly within the provisions of section 6008 of the Revised Statutes of Idaho, and do not come within the rule laid down in *McGinness v. Stanfield,* 6 Idaho, 372, 55 Pac. 1020. In that case we held that "under the statutes of Idaho a verbal contract for the sale or transfer of real estate is not admissible in evidence against a stranger to such contract"—a very different case. The judgment of the district court is reversed, and the cause remanded, with instructions to the district court to enter judgment in accordance with the prayer of defendant's cross-complaint. Costs awarded to appellants.

Quarles and Sullivan, JJ., concur.