(June 11, 1902.)

## DEEDS v. STEPHENS.

[69 Pac. 534.]

AGREEMENT—LEASE—SPECIFIC PERFORMANCE.—An oral agreement· to lease real estate for a term exceeding one year may be enforced where the evidence shows part performance.

SAME—STATUTE OF FRAUDS—COURT OF EQUITY.—Where the evidence discloses part performance by all the parties to the agreement, it removes the bar of the statute of frauds, and may be enforced in a court of equity.

DAMAGES.—In a suit for specific performance of an oral agreement, any damages properly pleaded and proved should be assessed by the court if warranted.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

I. N. Smith, for Appellant.

Facts are fully stated in the opinion. A court of equity, having acquired jurisdiction for one purpose, will retain it for all. Especially is this true in states under the reformed procedure. Hence, in suits for specific performance it is perfectly proper for a court of equity to grant legal and equitable reliefs, either alone or·ancillary to one another. The court therefore erred in refusing to admeasure damages. (Pomeroy's Equity Jurisprudence, sec. 242; Pomeroy's Specific Performance of Contracts, secs. 262, 474-480; Pomeroy's Remedies and Remedial Rights, secs. 78-82; Pomeroy's Rights and Remedies, secs. 91-97; Cathcart v. Robinson, 5 Pet. 264, 8 L. ed. 120, per Marshall, C. J.) The statute of frauds will not be permitted to be an instrument of fraud. If, therefore, it would be unconscionable to entertain it, it will be disregarded; if, also, its enforcement would result in irremediable damage or injury, either to estate or right, its enforcement will be refused. (Barton v. Dunlap, ante, p. 82;. Idaho Rev. Stats., secs. 3225, 6008; Story's Equity, secs. 747, 759,

761, 763, 768; codified in Idaho Rev. Stats., sec. 3225; Pomeroy's Equity Jurisprudence, secs. 431-858, especially 921-1293.) In cases relating to real estate oral contracts, where part performance has been made, it would be a palpable fraud to permit the statute of frauds to be interposed as a defense; the nature of the case at once shows that no adequate compensatory damages are recoverable; and, also, that unless equity interfere, the sufferer would be remediless. (Pomeroy's Equity Jurisprudence, secs. 378 et seq., 1409; Pomeroy's Specific Performance of Contracts, sec. 132; Bouvier's Law Dictionary, title "License"; *Feeney v. Chester,* 7 Idaho, 324, 63 Pac. 192; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Francis v. Greene,* 7 Idaho, 668, 65 Pac. 362; *Baldock v. Atwood,* 21 Or. 73, 26 Pac. 1058; *Lee v. McLeod,* 12 Nev. 280; *Flickinger v. Shaw,* 87 Cal. 126, 22 Am. St. Rep. 234, 25 Pac. 268; *Grimshaw v. Belcher,* 88 Cal. 217, 22 Am. St. Rep. 298, 26 Pac. 84; *Bowman v. Ayers,* 2 Idaho, 465, 21 Pac. 405; Taylor on Landlord and Tenant, sec. 31.) "Equity regards that as done which ought to be done." (Story's Equity, sec. 64 G; Pomeroy's Equity Jurisprudence, secs. 368, 369.)

McFarland & McFarland, for Respondent.

The mere violation of a promise is not fraud, unless the promise itself was originally made with a fraudulent intent. (*Crabill v. Marsh,* 38 Ohio St. 331; *Montacute v. Maxwell,* 1 P. Wms. 618; *Batturs v. Sellers,* 6 Har. & J. 249; *Lambert v. Watson,* 6 Har. & J. 252; *Wilson v. Watts,* 9 Md. 436; *Glass v. Hurlbert,* 102 Mass. 24, 39, 3 Am. Rep. 418; *Purcell v. Miner,* 4 Wall. 513; *Green v. Groves,* 109 Ind. 519.) "A contract must be actually concluded, for otherwise there are no rights upon which the equitable remedy can operate. Whenever, therefore, the transaction has not passed beyond the condition of negotiation or treaty, there can be no specific performance. And if it is left doubtful from all the evidence in the case whether a contract was concluded or not, equity will not grant its specific relief." (Pomeroy's Specific Performance of Con-

tracts, sec. 58, p. 158, secs. 303, 304; Fry on Specific Performance of Contracts, sec. 491; *Agard v. Valencia,* 39 Cal. 301.) A party claiming specific performance of a verbal contract must make out by clear proof the agreement alleged. (*Blumm v. Robinson,* 24 Cal. 128; *Forrester v. Flores,* 64 Cal. 26, 28 Pac. 107.) When the court cannot perform a part of the contract it will not perform any part. (Fry on Specific Performance of Contracts, sec. 802.) Nothing can be regarded as part performance to take the contract out of the statute of frauds which does not place the party in a situation which is a fraud upon him unless the contract is executed. (*Arguella v. Edinger,* 10 Cal. 150; *Weber v. Marshall,* 19 Cal. 447; *Crabill v. Marsh, supra; Wilson v. Watts, supra; Purcell v. Miner, supra; Wheeler v. Reynolds,* 66 N. Y. 232.)

STOCKSLAGER, J.—This case is here on appeal from a judgment of the district court of Nez Perces county. The amended complaint alleges that plaintiff is the owner in fee of lots 11 and 12, block 29, of the city of Lewiston, together with buildings and improvements, known as the "Isaman Building"; that about the first day of September, 1900, there was upon said premises a three-story brick building, and that on or about that date S. G. Isaman, plaintiff's grantor, who was then the owner of said building, leased and let all of the second and third floors of said building and that portion of the cellar containing the heating apparatus to one Woodward, until the first day of January, 1902; afterward said Woodward subleased and sublet said second and third floors and that portion of the cellar containing the heating apparatus to the defendant herein, and the defendant now occupies the same and resides therein; that since plaintiff has been the owner of said premises, during the year 1901, she has built and constructed an addition or annex to the rear of said building, consisting of three floors, with the knowledge and consent of said Woodward and defendant, that plaintiff erected and constructed said addition or annex for the purpose of renting and leasing the same for hotel purposes, and had negotiated and is now

negotiating with a tenant to rent and lease the same; that defendant has no right, title, claim, or demand in or to any portion or part of said addition or annex, or the possession thereof, and has never had any right, title, claim, or demand to the same, or the possession thereof; and that plaintiff has ever since the construction thereof been in possession, and entitled to the possession, of the same, and every part thereof, and still is in possession and entitled to the possession of the same. Then follows an allegation that defendant threatens to move her goods, furniture, etc., into said addition, and will use, occupy and hold the same, exclude plaintiff, her agents, etc., and will not permit plaintiff to lease any part thereof; that defendant has proceeded and is proceeding to carry out her threats; that on the sixteenth day of July, 1901, she refused to permit plaintiff's attorneys and agents to enter said addition or annex, and on said day wrongfully and unlawfully broke through and into the same, and broke down partitions, broke open doors leading to the same, moved goods and furniture therein, and has proceeded to tack down carpets and drive nails and tacks into the floors and walls of said addition, and otherwise injured the addition, etc., and committed waste therein and upon; that, unless restrained by order of the court, defendant will prevent any tenant of plaintiff from occupying the premises, and will herself move her household goods therein, and occupy and withhold same from plaintiff, and will compel plaintiff to institute an action for the possession, and will continue to break down doors and nail down carpets, and will prevent plaintiff from renting the same, deprive plaintiff of the rents, and thereby cause plaintiff great and irreparable damages, injury, and loss; that, as long as defendant continues her said acts and threats, plaintiff will be unable to place a tenant in possession of said annex, etc.; that defendant is insolvent, and cannot respond in damages in any sum plaintiff may recover; that such damages are such as are impossible to calculate. Then follows prayer for judgment; that defendant be enjoined from entering in or upon said annex, and be re-

strained from in any manner interfering with the plaintiff's right to the possession and occupancy thereof, etc. The answer admits the allegation of ownership of the property in dispute in the plaintiff; admits that improvements have been made on the premises, but denies that they have ever been completed; denies that Woodward sublet or subleased the premises to defendant, but avers that he assigned the lease to defendant, and that she now occupies the premises, etc. Each and all of the other allegations of the complaint are denied. Affirmatively, the defendant alleges that heretofore S. G. Isaman was the owner of the premises described, and the improvements thereon; that while he was such owner, and on October 1, 1900, he leased to one Woodward the second and third floors, part of the cellarway, and the heating apparatus therefor; thereafter said Woodward, with the knowledge and consent of said Isaman, assigned said lease to defendant, who took possession, and since said time has been, and now is, entitled to the possession thereof; that, after defendant entered into the quiet and peaceable possession of said premises, said Isaman transferred the premises to the plaintiff, who is a sister of Isaman; that, after defendant took possession of said premises, she carried on the business of running a lodging-house, for which the premises and buildings thereof were designed, constructed, and used; that the trade and traffic of such place, which is known as the "Grand Hotel," largely increased; and that the same became and was inadequate to meet the growing demands of defendant's increasing business; that thereafter the said Isaman, acting for plaintiff and this defendant, began negotiations for the enlargement and improvement of, and alteration of, said demised building; said plaintiff, through her agent, Isaman, represented that the lands and premises stood in the name of his sister, and that he had transferred them to her to protect himself from certain litigation then pending against him, and that said transfer was to enable him to do business in the name of his sister, and that he still did business relative to the said premises for his sister, and had control and management thereof,

and full, complete, and lawful power and authority from her
so to do; that, after the transfer of the premises from Isaman
to plaintiff, defendant attorned to plaintiff, and paid rent to
her through her agent, S. G. Isaman, and that the plaintiff,
acting through her said agent, acknowledged the tenancy of
defendant in and to the demised premises, etc. Then follows
an allegation that plaintiff, acting through her agent, Isaman,
and defendant entered into an agreement relative to the en-
largement and improvement of the Grand Hotel, by which plain-
tiff, through her agent, sought to, and did, obtain permission
of defendant to excavate rock and earth immediately back of
the hotel for the purpose of erecting a large addition thereto,
which was to be constructed, and to be a part of the hotel;
further, sought to alter and enlarge the stairway in the part
occupied by defendant, to enlarge and widen the skylight, and
make divers and other improvements; make proper hallway
connections in said Grand Hotel, and thence into and con-
necting with said addition, by cutting out one room from the
Grand Hotel, as then standing, and converting the same into
a hallway; to improve the sewer service, heat service, and
lighting of said hotel; and to so construct the same that the
entire building, as improved, would have an entire continu-
ance and complete system of sewerage and heating therein.
That in order to effect such improvements, it became neces-
sary for defendant to give her consent to said alterations before
plaintiff could make the same, and plaintiff, through her said
agent, promised and agreed that if defendant would so consent
to said alteration, and give plaintiff possession of such part
of said hotel as would be necessary therefor, plaintiff would,
in consideration thereof, construct the enlargement, and, for
defendant's permitting the mutilation of such building under
said lease, that plaintiff would make a contract for lease for
said annex to the defendant, entitling her to possession, occu-
pancy, etc., from June 1, 1901, when it was agreed the same
should be completed, to January 1, 1902, together with a
portion then occupied by defendant, at agreed price of $100 per

month, and plaintiff would reduce to writing the agreement relative to the leasing thereof, and, by virtue of such agreement, lease to defendant the entire premises so enlarged and improved for a period of ten years, at stipulated rental of $200 per month which lease should contain the usual covenants; that, as a consideration for such agreement, defendant gave her consent to, and permitted, plaintiff, her agents and employees engaged upon and within said hotel, to freely use her portion of said premises, and they did greatly alter the interior of the demised premises, to the detriment of defendant, and never completed the alteration thereof, changed and never replaced the sewerage system, and greatly altered and damaged the rental value of several rooms in said hotel; that in the prosecution of such work the business of defendant was injured by the noises and dirt, and the chaotic condition of her lodging-house, and that the same caused her to lose patrons, and caused her great and irreparable loss and injury; that such chaotic conditions continued from the commencement of said work until about June 1, 1901; that it was agreed at the time of making the contract that said work should be finished by June 1, 1901; that said Isaman, acting for and on behalf of plaintiff, and as her agent, induced defendant to accede to and permit the use and occupancy of said premises by plaintiff for the purposes hereinbefore alleged, and constantly stated and agreed and represented that said contract and agreement relative to the leasing of said premises would be reduced to writing, and on the first day of June, 1901, plaintiff would turn over to defendant the entire and unmolested possession of said enlargement or addition, and on the 1st of January, 1902, plaintiff would deliver the lease to defendant for the entire building—defendant agreeing to pay rent therefor for a term of ten years at the rate of $200 per month—and would execute to plaintiff a good and sufficient bond in the sum of $3,000, with such sureties as plaintiff would demand, for the faithful performance of the terms and covenants in said lease on her part, and that Mr. Vernon and Fred Woods were agreed upon as bondsmen, and

they agreed to sign such bond; that defendant has at all times been ready and willing to perform her part of said contract; that plaintiff has refused to comply with the remainder of the contract, although plaintiff admitted, in writing, by her brother and agent, that said addition was constructed at request of defendant; that defendant has no other plain, speedy, or adequate remedy at law, or otherwise, for a redress of her wrongs or the enforcement of her rights herein, except by a decree of this honorable court compelling specific performance of said contract so agreed upon, and as alleged, and the leasing to her of the premises for the period named, and the further delivering to her of the immediate possession of said premises. Then follows prayer for relief in accordance with the answer.

To this answer and cross-complaint, plaintiff filed an answer specifically denying the allegations of the affirmative matter set up in defendant's answer and cross-complaint, and, in what is termed "another further, and second answer," says that in the fall or winter of 1900, defendant requested plaintiff to erect and construct the annex or addition hereinbefore described, and to rent it to defendant for a term of three years from the first day of January, 1902. Plaintiff, desiring to erect and construct said addition, agreed to and with defendant that plaintiff would pay defendant thirty dollars for any and all damages and inconveniences which the construction or erection of said addition would occasion the defendant. Said defendant agreed then and there to and with plaintiff that she would receive the sum of thirty dollars in full payment and satisfaction of any and all damages which would be occasioned her by the erection and construction of said addition, and would permit plaintiff, without further consideration, to erect and construct said addition; that plaintiff paid defendant twenty dollars of said sum, and tendered the balance; that at the time of said agreement defendant was in the possession of that portion of the premises theretofore known as the "Grand Hotel"; that defendant proposed to plaintiff that, if she would complete the construction and erection of said addition, defendant

would rent the same from plaintiff from the first day of June, 1901, till the first day of January, 1902, and pay her the rental value of forty-five dollars per month in advance, and on the first day of January, 1902, rent the entire premises, and pay her therefor the rental of $200 per month in advance, and defendant then and there proposed, stated, and agreed that, to show her good faith, and to insure her that she would take said premises for at least three years, she would execute and deliver to plaintiff a good and sufficient bond in the sum of $1,000, with two good sureties, conditioned that upon the completion of said addition she would rent the same, and pay therefor forty-five dollars per month, in advance from the first day of June, 1901, in the event that the same was completed by that time, till the first day of January, 1902, and would take and rent said entire premises for the period of at least three years from the first day of January, 1902, at a monthly rental of $200 in advance; that plaintiff then and there verbally accepted defendant's proposition, which was also verbal, and thereafter, on divers times prior to the commencement of this action, made demand upon the defendant for said $1,000 bond, but defendant has wholly failed to furnish said bond, although the delivery of said bond was the primary consideration for said agreement; that thereafter, and prior to the commencement of this action, it was agreed by and between the defendant and plaintiff that said contract or agreement should be waived, abandoned, and rescinded; and that the same was done. For another further and third answer, plaintiff says that defendant ought not to have specific performance of the alleged contract in her affirmative answer and cross-complaint decreed, because neither the plaintiff, nor any person by her legally authorized, did ever make or sign any contract or agreement in writing, binding this plaintiff, to make or execute or deliver any such lease of said premises as she has in said affirmative answer and cross-complaint demanded, and that said defendant ought not to have the said alleged contract or any other verbal contract with reference to said premises executed or performed, for

the reason that said agreement, by reason of the provisions of subdivision 5 of section 6009 of the Revised Statutes of Idaho, is invalid.

Upon the issues thus joined this case was tried, the court finding the facts, to wit: "This action came on regularly for trial before the court on the eighteenth day of October, 1901, upon the affirmative answer and cross-complaint of the defendant herein, and the answer of the plainiff to the affirmative answer and cross-complaint of the defendant; Smith & Bailey appearing for the defendant, and McFarland & McFarland appearing for the plaintiff. Witnesses were sworn, examined, and testified, and documentary evidence introduced and admitted on behalf of defendant. Whereupon defendant rested her case, and announced to the court that she had no further testimony. Whereupon plaintiff moved the court for judgment against the defendant upon the testimony adduced as aforesaid, and after argument of respective counsel the court finds the following facts: That plaintiff and defendant did not enter into the agreement or contract set forth in defendant's said affirmative answer and cross-complaint herein, or any agreement or contract which a court of equity can enforce specific performance of. As conclusions of law from the foregoing facts, the court finds that said defendant Lottie Stephens is not entitled to the lease demanded in her affirmative answer and cross-complaint, and is not entitled to a decree of specific performance of the contract set forth in her affirmative answer and cross-complaint; and it is hereby ordered that plaintiff's said motion be, and the same is hereby, sustained and granted, and that judgment be rendered accordingly." Then follows a judgment in harmony with the foregoing findings and conclusions, and for costs against defendant, dated October 23, 1901.

Testimony was introduced on behalf of defendant, to wit: Power of attorney from Kate Deeds to S. G. Isaman, with "power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present; hereby ratifying and con-

firming all that my said attorney may or shall do, or cause
to be done, by virtue of these premises." Fred Woods testified
that he knew Mr. Isaman and the defendant. Stated that he
saw Mr. Isaman at the request of defendant, and asked him to
enlarge the hotel, put an addition on, and give a twenty year
lease. "We went over the details. He asked me to state
specifically what changes we would want. I told him to go
down and see Miss Stephens. Mr. Isaman, Miss Stephens, and
myself went over these changes. He said he would still think
it over. Three or four days afterward, I met him by appoint-
ment. I asked him what the rent would be, and he said, '$225
per month.' He afterward came to the house. Miss Stephens
came into the room. He told us that he had thought the en-
tire matter over, and that he could not lease for twenty years,
nor fifteen years, but that he would give a ten year lease for
$225 per month; and I told Miss Stephens to dismiss the mat-
ter. He came back some few days afterward and accepted the
proposition that we made for a ten year lease." Then he tes-
tifies as to the contract for work to be done, and the rent stipu-
lated for the entire building after January 1, 1902, was to be
$200 per month. "She to give a bond, signed by herself and
Colonel Vernon, for the sum of $3,000. The bond was to se-
cure the payment of the rent. Colonel Vernon consented to
signing the bond at request of Mr. Isaman." The testimony of
defendant is a reiteration and confirmation of all the aver-
ments of her answer and allegations of her cross-complaint and
affirmative matter set out in her answer. Other witnesses testi-
fied on behalf of the plaintiff, but, as no denial of any of the
evidence on behalf of defendant was offered by the plaintiff, it
is unnecessary to quote further from the evidence.

Appellant assigns twenty-three errors occurring on the trial.
A careful inspection of the record discloses that it will not be
necessary to pass upon all the assignments of error. If the con-
tention of appellant is to be accepted as the law of the case,
she would be entitled to relief, if we take the pleadings of de-
fendant and cross-complainant as our only guide. Appellant
alleges that she was to have a ten year lease from January

1, 1902, on the property in controversy, she to execute a good and sufficient bond in the sum of $3,000, conditioned for the faithful performance of her part of the contract. Respondent alleges that the lease was to be for three years from the first day of January, 1902, conditioned that appellant should execute and deliver a good and sufficient bond in the sum of $1,000, with conditions for the faithful performance of her part of the lease. It is alleged by appellant that the agreement for lease was verbal, and this is admitted by respondent. The respondent having failed to introduce any testimony, we are confined to the pleadings, evidence on behalf of appellant, and findings of the court, to aid us in ascertaining whether the judgment of the court should be sustained.

It is urged by counsel for respondent that, under the provisions of subdivision 5 of section 6009 of the Revised Statutes (statute of frauds), the appellant is remediless, under the pleadings. It says: "An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein, and such agreement if made by an agent of the party sought to be charged is invalid unless the authority of the agent be in writing subscribed by the party sought to be charged." Section 6008 of the statute: "The preceding section must not be construed to affect the power of a testator in the disposition of his real property by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law, nor to abridge the power of any court to compel the specific performance of any agreement in case of part performance thereof." It is urged by counsel for appellant that there has been such part performance of the agreement by both appellant and respondent as to bring it under the provisions of the last section, and he cites a number of authorities in support of his position. We are of the opinion that a careful inspection of the record and the evidence in this case sustains him in his position, and we so conclude. (*Barton v. Dunlap,* ante, p. 82; Story's Equity Jurisprudence, secs. 747, 759, 761, 763; Pomeroy's Equity Jurisprudence, secs. 921, 1293; *Feeney v. Chester,* 7 Idaho, 324,

63 Pac. 192; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Francis v. Green,* 7 Idaho, 668, 65 Pac. 362.) When we look to the evidence in this case, we find that it is established by appellant that she had repeated conversations with Mr. Isaman, who, she alleges, was the brother and agent of respondent, in which he promised and agreed that as soon as the work was completed, which it was thought would be about the 1st of June, 1901, a lease according to their agreement would be executed and delivered to her, upon condition that she would execute her bond in the sum of $3,000 for the faithful performance of her part of the contract. She also says that the bondsmen were agreed upon, to wit, Colonel Vernon and Fred Woods, and that they agreed to sign such bond. Fred Woods and Colonel Vernon corroborate all the statements of appellant as to the terms and conditions of the agreement, and, in the absence of any testimony to the contrary, we are led to the conclusion that the court erred in finding that plaintiff and defendant did not enter into an agreement or contract which "a court of equity can enforce specific performance of, and that no such part performance of any contract was had as would obviate the neccessity of a written agreement, or as would support a decree for specific performance."

Appellant assigns as error the refusal of the court to assess the damages, as shown by the proof, she had sustained by reason of respondent not having complied with her part of the agreement. If the damages were definitely alleged in the cross-complaint, it would have been incumbent upon the court to ascertain the amount, if any, the appellant had sustained; but we do not think the allegations of the cross-complaint sufficiently definite to warrant us in holding that the court erred in refusing to dispose of this question under the pleadings.

A number of errors are assigned, based upon the refusal of the court to admit certain evidence, that we deem unnecessary to pass upon. It is evident that the rulings of the court on all questions relative to the admission of evidence were based upon the theory that the appellant was entitled to no relief under the pleadings and evidence of appellant, and hence all evidence

relative to damages under the verbal contract or agreement between the parties was inadmissible.

Cause reversed, and remanded for further proceedings in harmony with this opinion, with costs to appellant.

Quarles, C. J., and Sullivan, J., concur.