FERGUSON v. BLOOD.

(Circuit Court of Appeals, Ninth Circuit. March 11, 1907.)

1. VENDOR AND PURCHASER—CONTRACTS—EXECUTION—EVIDENCE.

Defendant, having agreed to purchase an interest in certain mining claims, at a meeting of all the parties stated to plaintiff that he would sign the contract on its receipt from his agent, L. Defendant proceeded under the contract as though it had been signed by all the parties, made payments under it, went into possession of the property, participated in its development as though the contract had been executed, and on the trial refused to produce the original on notice. *Held* to warrant an inference, in the absence of evidence to the contrary, that defendant in fact signed the contract.

2. FRAUDS, STATUTE OF—RIGHT TO URGE—ESTOPPEL.

Where defendant led plaintiff to believe that he had signed a written contract for an interest in certain mining claims, and induced plaintiff to purchase claims on which he had options, and to otherwise expend money and time to carry out the provisions of the agreement, defendant could not assert that the contract was void under the Idaho statute ·of frauds because he did not in fact sign the same, under Rev. St. Idaho 1887, § 3225, declaring that, where a contract which is· required by law to be in writing is prevented from being put in writing by the fraud of a party thereto, any other party who is by such fraud led to believe that it is in writing, and acts on such belief to his prejudice, may enforce it against the fraudulent party.

3. SAME—PART PERFORMANCE.

Where a contract for the purchase of an interest in certain mining claims was wholly performed by the vendor, and almost completely performed by the purchaser, prior to the latter's repudiation thereof, such performance was effective to take it out of the statute of frauds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, §§ 293, 294.]

4. VENDOR AND PURCHASER—VENDOR'S LIEN—FORECLOSURE—DEFICIENCY JUDGMENT.

Where a seller of an interest in certain mining claims retained title to the buyer's interest to secure payment of the price, the vendor was entitled to foreclose the lien so retained on the purchaser's default, as provided by Rev. St. Idaho 1887, §§ 3440, 4520, and 4521, and to recover a a deficiency judgment against the purchaser on the failure of his interest to sell for enough to satisfy the debt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 822, 823.]

Appeal from the Circuit Court of the United States for the Central Division of the District of Idaho.

Hawley, Puckett & Hawley, for appellant.

Richards & Haga, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The appellee was plaintiff in the court below, the suit being brought by him against the appellant and one S. C. Fulton, based upon an alleged ·written contract ·entered into between the appellant, Ferguson, as party of the first part, and Blood and Fulton, as parties of the second part, concerning ·certain placer ground in Boise county, Idaho. The plaintiff below in his complaint set out a descrip-

tion of the property alleged to be included and intended to be included in the contract, and charged that one-half of the amount to be paid by the appellant, Ferguson, under its terms, was to belong to Blood, and the other one-half thereof to Fulton; that pursuant to the terms of the contract the appellant, Ferguson, paid to Blood and Fulton $19,500 each, but defaulted in the payment of the last $11,000 due, and refused to pay the same, or any part thereof, after demand made for such payment; that Blood and Fulton "fully kept and performed all and every of the terms of said agreement by them and each of them to be kept and performed"; that Fulton refused to join as plaintiff in the suit, for which reason he was made a defendant thereto; and that there remains due and owing the plaintiff, Blood, from Ferguson, under the terms of the contract, the sum of $5,500, with interest thereon from the 15th day of August, 1902—the plaintiff's prayer being for judgment against Ferguson for that sum, with interest, and that a decree be made for the sale of all of his interest in and to the described premises, the proceeds of which sale to be applied in the payment of the amount due the plaintiff and the costs and expenses of the suit, and that the defendant, Ferguson, and all persons claiming under him, be barred and foreclosed of all rights and equities in the premises, and for general relief.

The alleged written contract was annexed to the complaint and made a part thereof. It bears date July 26, 1901, and purports to have been made by and between Ferguson as party of the first part, and Blood and Fulton as parties of the second part, by which the parties of the second part agreed to convey and deliver to the party of the first part an undivided one-half interest in certain described mining ground situated in Boise county, Idaho, "to all of which properties the said parties of the second part hereby agree to secure undisputed titles before any consideration shall be given by the party of the first part," and by which the parties of the second part further agree to convey to the party of the first part an undivided one-half interest in all the personal property on the premises described, consisting of cabins, ditches, water rights, flumes, piping, Hotchkiss giants, and other tools and implements used in working the property; in consideration of which grant and the other considerations mentioned in the contract, the party of the first part agrees to pay the parties of the second part the sum of $50,000, in manner following, to wit:

"Seventeen thousand dollars ($17,000) at or before the signing of this agreement; ten thousand dollars ($10,000) in three months from the date hereof; seven thousand dollars ($7,000) in five months from the date hereof, or at a later date (it being hereby stipulated and agreed by the parties of the second part that they will earnestly endeavor to secure an extension of payment on the options now held by them and which the aforesaid seven thousand dollars is intended to liquidate, which will permit deferring this latter payment of seven thousand dollars to a date three months later than above stated). Three thousand dollars ($3,000) in eight months from the date hereof, and the remainder or thirteen thousand dollars ($13,000) on the 15th day of August, A. D. 1902; and should the party of the first part default or be unable to make these latter two payments at the time specified it is agreed by the parties of the second part that he shall have further time to make such payments, and shall not forfeit any right or interest he may have acquired in the said property by reason thereof."

The alleged written contract further provides that out of the first payment of $17,000 the parties of the second part would erect, build and equip a first-class dredging plant of the Morris pattern, or some similar pattern, to be mutually agreed upon by the parties to the agreement, and place the same upon a boat 30 feet wide and 75 feet long on the mining ground described, together with a force pump having a nozzle pressure of 100 pounds to the square inch, one tubular boiler of 75 horse power, and one engine of 70 horse power, with all necessary connections, including shafting, pulleys, belts, derricks, head box, double sluice boxes, and riffling, and all other auxiliaries, tools, etc., requisite in a first class dredging plant of the kind, the pump to be equipped with a suction pipe not smaller than 10 inches in diameter.

The alleged written contract contains these further stipulations:

"It is further agreed by the parties of the second part that if a certain tract of land of about five hundred acres of land lying west of the Lippincott property, as described above, shall be available, they will locate the same and add it to the lands above described which are to be the joint property of the parties hereto under this agreement, and that the expense of locating, recording and doing assessment work on the said lands shall be borne by the parties hereto jointly.

"It is also agreed that if a certain placer property comprising fifteen hundred acres more or less, located on Kanley Creek adjacent to the properties above described and owned and controlled by the Gold Sand Mining and Milling Company, of which Messrs. Blood and Fulton, parties of the second part, are parties in interest, shall become available and can be purchased, the parties of the second part agree to acquire the same and consolidate it with the property first described herein on conditions hereafter to be agreed upon by the parties hereto, provided a mutual and satisfactory agreement can be reached relating thereto.

"It is further agreed that upon the completion of the dredge above referred to and described, and when the same shall be ready for operation, a sinking fund of one thousand dollars ($1,000) shall be created to pay the expenses of operation until the plant shall be self-sustaining, by each of the parties hereto contributing five hundred dollars ($500), the residue or remainder of which shall be covered into the treasury of the corporation, which it is the purpose of the parties hereto to incorporate, with all other moneys and earnings accruing to the said corporation."

The answer of the appellant, Ferguson, put in issue the execution by him of the alleged contract, and also denied that the property described in the complaint is the property included and intended to be included in that or any other contract entered into between the parties. In his answer Ferguson admitted the payment by him to Blood and Fulton of $19,500 each, but denied that such payments were made under or in pursuance of the alleged contract, and denies that anything remains due from him under said contract, or at all, or that any demand has been made upon him for such balance, and denies the performance by Blood and Fulton of their part of the alleged contract.

On the trial the defendant Ferguson introduced no evidence, so that the case rests solely upon the plaintiff's proof. By that it appears that in the spring of 1901 the appellee began negotiations with the appellant for the purchase by him of an undivided half interest in certain placer ground owned by the appellee and Fulton, and upon some of which they held options from others. The negotiations culminated

in a telegram of date April 18, 1901, from the appellant to the appellee, notifying the latter that in a few days one M. J. Lawlor would arrive, clothed with full authority to act for the appellant in the matter concerning which they had been negotiating. Accordingly. Lawlor met the appellee and Fulton in Denver, and the three then went to Idaho to examine the ground; and, after spending some time in such examination, Lawlor, according to the only evidence in the case, said to Blood and Fulton:

"There is no use prospecting any further; I am satisfied, and now we will go out to Boise and I will make my report to Mr. Ferguson."

He did so, and the three remained in Boise to hear from the appellant. On the 26th day of June, 1901, Lawlor received a telegram from the appellant stating that he would send $1,000 that day, $9,000 in 20 days, $7,000 in 30 days, and the balance in four months, and asking where he could buy machinery. This telegram was shown by Lawlor to the appellee, and $1,000 paid to the latter and Fulton. Lawlor then returned to Shenandoah, Pa., where the appellant resided, and on July 18, 1901, the appellee received from Lawlor a telegram from Shenandoah, Pa., saying:

"Ferguson cannot leave until Tuesday or go farther than Buffalo. Want you to meet us Iroquois Hotel Tuesday evening. Notify Fulton other matter arranged, answer."

And two days later the appellee received from Lawlor another telegram sent from Shenandoah, reading:

"Meet us in Buffalo as requested in former message to sign papers. Have money for both payments, answer."

In response to these telegrams, the appellee went to Buffalo, where he met the appellant in the evening of July 25th, when and where they talked over the matter for some time. The next morning appellant, appellee, and Lawlor met and again went over the matter, when the appellant told the appellee that he could not make the payments as stated in the telegram of June 26th, but that in addition to the $1,000 already paid he would pay $9,000 in 20 days, $7,000 in 30 days, $10,000 in 3 months, and the balance of $13,000 August 15, 1902. The appellee consented to this, and thereupon the appellant dictated the terms of the agreement to be formerly prepared by Lawlor and appellant, saying to his representative, Lawlor:

"You people are competent to draw up this agreement. Have Mr. Blood sign it and acknowledge it, and forward it to my home in Shenandoah, Pennsylvania, and I will sign it and acknowledge it there."

Accordingly, the agreement was drawn up by Lawlor, and signed and acknowledged by the appellee and delivered to Lawlor, who said that he would send it to the appellant for execution—at the same time giving to the appellee a compared copy of the agreement. Later Lawlor went to Idaho, and, with the appellee, examined the county records to ascertain the title of the property that was to be transferred, and, after having some defects cured, expressed himself as satisfied with the title, and thereupon delivered to the appellee two checks signed by the appellant, one for $9,000 and the other for $7,000. All of the

other payments provided for by the contract were subsequently made by the appellant except the last, on which he also paid $2,000, leaving a balance unpaid of $11,000.

Blood and Fulton built the dredge provided for by the contract, equipped it, and commenced working the property, the appellant being represented on the ground by Lawlor, and personally spending some time there in the summer of 1902, watching the operations, and making suggestions as to equipment and the place to work. At that time he had paid $37,000 under the contract, and there discussed with the appellee the last payment to be made by him, saying that he was not certain that he could make that payment promptly, but would advise the appellee as soon as he returned to his home. At no time did he intimate that he had not signed the written agreement, and the uncontradicted testimony of the appellee is to the effect that both the appellant, and Lawlor told him that appellant had signed it, and, furthermore, after notice to him to produce the original instrument, the appellant failed to do so at the trial. Under such circumstances he should not be heard to say that the contract was void under the Idaho statute of frauds (Rev. St. 1887) the provisions of which are as follows:

"Sec. 6007. No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

"Sec. 6008. The preceding section must not be construed to affect the power of a testator in the disposition of his real property by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law, nor to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof.

"Sec. 6009. In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents: * * * (5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein, and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

There are several reasons why this contention on the part of the appellant is wholly untenable. In the first place, in view of the appellant's statement to the appellee at Buffalo that he would sign the contract upon its receipt; that the written contract was sent to him by his agent, Lawlor; that he proceeded under the contract as though it had been signed by all the parties thereto, making payments under it, going into possession of the property under it, participating in the development of the property, and conducting himself in all respects as though it was an executed contract, thus leading the appellee to believe that he had signed it, as he stated he would; and considering the further fact that he failed to produce the original at the trial when notified to do so—we think the conclusion inevitable, in the absence of any evidence to the contrary, that he did in fact sign the paper.

In the second place, if it be conceded that the statutes above quoted require that such contracts as are here involved be signed by both grantor and grantee, the appellant cannot avail himself of such requirement, in view of the facts here shown, because of section 3225 of the Revised Statutes of 1887 of Idaho, which provides that:

"Where a contract, which is required by law to be in writing, is prevented from being put into writing by the fraud of a party thereto, any other party who is by such fraud led to believe that it is in writing, and acts upon such belief to his prejudice, may enforce it against the fraudulent party."

Certainly the appellant, by his conduct, led the appellee to believe that he had signed the contract, and to purchase claims on which he had only options, and to otherwise expend money and time in carrying out the provisions of the agreement. Under such circumstances, to permit the appellant to repudiate the contract on the ground that he did not in fact affix his signature to it, would manifestly be to permit him to practice fraud and deception upon the appellee. Moreover, part performance of a contract takes it out of the statute of frauds. In this case not only was the contract partly, but it was almost completely, performed by the appellant. 26 Enc. of Law, pp. 50–52; Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383; Brown v. Sutton, 129 U. S. 238, 9 Sup. Ct. 273, 32 L. Ed. 664; Riggles v. Erney, 154 U. S. 244, 14 Sup. Ct. 1083, 38 L. Ed. 976; Deeds v. Stephens, 69 Pac. 534, 8 Idaho, 514; Fleming v. Backer (Idaho) 85 Pac. 1092; Barton v. Dunlap, 66 Pac. 832, 8 Idaho, 82; Francis v. Green, 65 Pac. 362, 7 Idaho, 668; Male v. Leflang, 63 Pac. 108, 7 Idaho, 348.

Where one contracts to convey real estate to another upon the payment of the agreed price, retaining the title until payment is fully made, it is not very important, in our opinion, what the security so retained is called, whether a trust, a vendor's lien, an equitable mortgage, an equitable security, or any other kind of a lien. Like the Supreme Court of Tennessee:

"We are not able to draw any sensible distinction between the cases of a legal title conveyed to secure the payment of a debt, and a legal title retained to secure the payment of a debt. In both cases, courts of chancery consider the estate only as security for the payment of the debt, upon a discharge of which the debtor is entitled to a conveyance in one instance, and a reconveyance in the other." Graham v. McCampbell, 19 Tenn. 52, 33 Am. Dec. 126.

Where the title is retained by the seller as security for the payment of the debt, the security is, in this country, very generally regarded as possessing all the essential features of a mortgage, and the vendor as standing for all practical purposes as mortgagee in relation to the vendee. See 29 Cyc., pp. 770, 771, and notes; Hardin v. Boyd, 113 U. S. 764, 5 Sup. Ct. 771, 28 L. Ed. 1141; Lewis v. Hawkins, 90 U. S. 126, 23 L. Ed. 113; Wheeling Bridge & T. Ry. Co. v. Reymann Brewing Co., 90 Fed. 189, 32 C. C. A. 571; Seattle L. S. & E. Ry. Co. v. Union Trust Co., 79 Fed. 179, 24 C. C. A. 512; White v. Ewing, 69 Fed. 452, 16 C. C. A. 296. And as such, he seems to be regarded by statute in Idaho. Rev. St. Idaho 1887, §§ 3440, 4520, and 4521. So regarded, there can be no doubt of the power of the court to enter a deficiency

judgment, where, as in the present case, the sale of the vendee's interest in the property fails to bring enough to satisfy his debt. Authorities supra.

The judgment is affirmed.