214 P.2d 880

REYNOLDS IRRIGATION DIST. v.
SPROAT et ux.

No. 7416.

Supreme Court of Idaho.

Feb. 13, 1950.

See also 206 Idaho 315, 206 P.2d 774.

Smith & Ewing, Caldwell, Maurice H. Greene, Boise, for appellant.

Edwin Snow, Boise, E. G. Elliott, Boise, for respondents.

TAYLOR, Justice.

Warm Springs Creek is a short stream tributary to Snake River in Canyon County. Its visible source is a spring known as Warm Springs located in the bottom of a draw approximately midway between the outlet into Snake River and a bluff at the upper end of the draw. The bluff follows generally the course of the river through the country separating the valley floor from a higher mesa or plateau. Prior to the application of water in the irrigation of land on the mesa, the springs had a natural flow of forty to fifty miners' inches. Beginning about 1915, or earlier, water was brought from the Boise River, in a foreign watershed, by the United States Bureau of Reclamation and applied to the irrigation of land in what is now the Boise-Kuna Irrigation District, lying on the plateau above the Warm Springs Creek watershed. Some of this water, by seepage and percolation, appeared in Warm Springs and surrounding area, increasing the flow of the springs to as much as 1300 inches in recent years. This seepage rose to the surface in the draw above the springs and formed a small pond. About 1916 or 1917 defendants began diverting water from the immediate area where it thus collected and applied it to the irrigation of land then occupied by them. The seepage increased in subsequent years to the extent that lands in the area above and to the east of the springs became water-logged. These lands being within the Boise-Kuna Irrigation District, the United States Reclamation Service, at the request of the district, and acting as its agent, in 1926 began the construction of a drainage system consisting (at present) of a trench with six terminal branches. On four of these terminal branches wells were dug to facilitate the escape of the underground water into the drainage trenches. These laterals and wells are located in the area above and east of the warm springs and the waters collected therein are conducted to the southwest, by-passing the springs, and emptied into Warm Springs Creek below the springs. One of the lateral branches of this drainage system, known as the Simpson Drain, extends through the area from which defendants had been diverting water and across their diversion ditch. This construction de-

220

stroyed a part of defendants' ditch and lowered the water level, making it necessary that defendants' ditch be lowered, extended and connected with the drain in order to continue their diversion. Thereafter the defendants diverted their water directly from the Simpson branch of the drain.

In 1934 the plaintiff district was organized and began diverting water at the springs for the irrigation of the district lands. In that same year a decree was entered in the district court, in Bachman et al. v. Reynolds Irrigation District et al., 56 Idaho 507, 55 P.2d 1314, adjudicating the rights and priorities of the water claimants in Warm Springs Creek. The defendants were not parties to that suit and their rights were not affected thereby. Reynolds Irrigation District v. Sproat, 65 Idaho 617, 151 P.2d 773.

The well, on the Simpson branch of the drain, known as the Simpson Well, was put down in 1941 and discharges approximately 125 inches of water into the Simpson Drain above defendants' point of diversion. This increased the flow in the drain and defendants, claiming the right to divert all of the water in the drain at their point of diversion, have diverted the increased flow. The plaintiff district commenced this action (apparently sometime in 1941) and in its complaint alleges its right as established by the decree of 1934 in the amount of eight cubic feet per second with priority of April 1, 1934, and a second right claimed by it under a license issued by the Commissioner of Reclamation for 23.56 cubic feet per second with priority of March 8, 1929; that it has since continuously applied these waters, when available, to the irrigation of the lands within the district; that the water collected in the drainage system is tributary to and a part of the source of supply of warm springs creek and, as such, was decreed by the court in the adjudication of 1934; that defendants claim an interest in and to the water so decreed to the plaintiff and appropriated by plaintiff under the water license; and that the defendants have diverted water from the drain, the right to the use of which is vested in the plaintiff; that defendants' claim is unlawful and without right and that the defendants have no interest, right or title in the water thus diverted by them.

The defendants deny the plaintiff's allegations of ownership and deny that the water claimed by them is or ever has been naturally tributary to Warm Springs Creek. They allege their appropriation commenced in the year 1916 and that they have since continuously diverted and appropriated the water and applied it to a beneficial use in the irrigation of their land and also allege adverse use thereof for more than thirty years (the answer having been filed April 11, 1947).

The trial court found for the defendants and plaintiff has appealed.

The court found that the seepage water in question was originally diverted from

the Boise River by the Bureau of Reclamation and belonged to the primary appropriator; that there is no proof that in the absence of the drainage ditches the water would or would not appear in Warm Springs Creek; that defendants' diversion from the drain ditch in nowise affects the supply of water in Warm Springs Creek available for diversion at plaintiff's point of diversion; "that at the time of the construction of said government drain ditches, the officials of the United States Reclamation service granted to defendants, for a valuable consideration, the right to divert and use for the irrigation of their lands the waters developed and flowing in said drain ditch at defendants' said point of diversion; that beginning about the year 1926, defendants have continuously during each irrigation season diverted from said drain ditch and applied to beneficial use in the irrigation of their said lands all the water flowing in said drain ditch at said points, that is, varying amounts of water up to but not exceeding a maximum amount of 300 miners' inches (6 cubic feet per second); and have irrigated thereby about 100 acres of their said land; * * * that for more than 20 years last past defendants have openly, notoriously and under claim of right adverse to plaintiff and to any one else whomsoever, diverted and beneficially used in the irrigation of their said land, which is arid land, the quantites of water aforesaid, and plaintiff at all times has had full knowledge of defendants' said adverse claim to and use of said water."

Appellant's first assignment charges error in the admission of testimony offered by defendants to prove an oral agreement entered into by the defendant Hugh Sproat with certain employees of the Reclamation Service, by the terms of which Sproat claims to have given to the Boise-Kuna Irrigation District a right of way through land then owned or controlled by him in return for the right to divert water from the drain. The particular objection urged is that the proof offered was hearsay, that is, a conversation between Sproat and two employees of the service who appeared upon the property with a dragline for the purpose of digging the drain. If the proof was limited to the statements of such employees, relayed to the court through Sproat, it would be objectionable as hearsay. However, Sproat did not repeat the statements of such employees, and the proof is not thus limited. Sproat testified that he objected to the digging of the drain through his land unless they would provide him with a connection between his ditch and the completed drain, and allow him to divert water from the drain, and that the agents concerned agreed, and made the connection requested and allowed him to divert the water. The manager of the project board of control testified that Sproat was diverting with the permission and acquiescence of the owners of the drain.

Plaintiff argues that this agreement is not binding upon it, which, of

course, is correct. However, in this state, such an oral agreement is valid and may be enforced as between the parties and their privies, where it has been performed, or partly performed. Stowell v. Tucker, 7 Idaho 312, 62 P. 1033; Feeney v. Chester, 7 Idaho 324, 63 P. 192; Male v. Leflang, 7 Idaho 348, 63 P. 108; Francis v. Green, 7 Idaho 668, 65 P. 362; Havlick v. Davidson, 15 Idaho 787, 100 P. 91; Wood v. Hill, Idaho, 212 P.2d 391. The destruction of defendants' ditch in the construction of the drain did not destroy any right previously established by the defendants to divert water. Sebern v. Moore, 44 Idaho 410, 258 P. 176. The agreement was a recognition by the owner of the drain of defendants' existing rights, and in addition was sufficient, as between the parties, to convey to the defendants whatever rights the drain owner had in the water collecting in the drain. We see no error in the admission of the evidence complained of.

■ The second assignment takes issue with the finding that the water collected by the drain belonged to the primary appropriator. In this case the record shows that the Boise-Kuna Irrigation District is the primary appropriator. It is settled law that seepage and waste water belong to the original appropriator and, in the absence of abandonment or forfeiture, may be reclaimed by such appropriator as long as he is willing and able to put it to a beneficial use. United States v. Haga, 9 Cir., 276 F. 41 at page 43; Ide v. United States, 263 U.S. 497, 44 S.Ct. 182, 68 L.Ed. 407; Sebern v. Moore, 44 Idaho 410, 258 P. 176; Crawford v. Inglin, 44 Idaho 663, 258 P. 541.

■ The record preponderately sustains defendants' right, as against the plaintiff, to the use of all of the water flowing in the Simpson branch of the drain above their point of diversion, prior to the drilling of the Simpson well. In fact, such right is practically admitted by the plaintiff both in the testimony and in its brief. Thus the controversy is reduced to the questions involved in the right of the defendants to divert and use the increased flow occasioned at their point of diversion by the opening of the Simpson well, as against plaintiff's claim that such increased flow comes from underground water theretofore appropriated by it. The plaintiff claims that this entire amount is an addition and increase in the previous flow of that branch of the drain, and that the full amount of the discharge from the well belongs to it. However, the evidence does not show that the well intercepts only water which would not otherwise reach the drain. On the contrary it appears that at least a part of the flow from the well was from percolation which theretofore did appear in the drain. It would, therefore, appear that at least a part of the water from the well is subject to defendants' prior appropriation. On the other branch of this question, as to the claim that the well diverts underground water theretofore appropriated by the

plaintiff, the evidence is to the contrary. The testimony of two of the plaintiff's witnesses, its president and one of its directors, is to the effect that defendants' diversion of this water does not diminish the amount of water flowing into Warm Springs. Plaintiff's point of diversion being at the springs, it follows that the flow 'from the well does not diminish the water available to the plaintiff at its point of diversion. But the plaintiff contends that, if this flow were not diverted by the defendants, and allowed to continue on down the drain, it would be discharged into Warm Springs Creek above the diversions of other appropriators from the creek whose rights are prior to the plaintiff's, and that, to the extent that it there satisfied those rights, plaintiff's diversion would be increased at the springs. That is, plaintiff would not then be required to allow that amount of water to pass its point of diversion in order to satisfy such prior users. On the trial plaintiff offered to prove the rights of these other prior appropriators from Warm Springs Creek. Some of the testimony offered for that purpose was excluded, on the objection of the defendants that the rights of other users had not been pleaded. As heretofore stated, in its complaint the plaintiff alleges that the water diverted by the defendants is water the right to the use of which is vested in the plaintiff, and the plaintiff seeks to quiet its title to that specific water. The claim that the water might belong to a stranger to the action, and that the plaintiff is entitled to have the water flow to such party in order to protect its diversion against his prior claim, not being pleaded, and being inconsistent with the claim made in its complaint that the plaintiff is the owner of the specific water right, the exclusion of the evidence offered was proper.

■ The drained land and the drain ditches involved are all within the Boise-Kuna Irrigation District, except that the last portion of the main trunk line and the point where the water is discharged into Warm Springs Creek are outside the district. The drainage system was not all built in 1926. It appears that percolation and seepage from the tableland above continued to increase through succeeding years, so that extensions of the drainage system became necessary and were made after the initial construction in 1926. The sinking of the Simpson well in 1941 was a part of this extension work. It may well be, under the ruling in Sebern v. Moore, supra, that this increased seepage was subject to the prior right of the primary appropriator. And since the use of a water right by permission of the owner inures to the benefit of the owner as against a claim of abandonment, Zezi v. Lightfoot, 57 Idaho 707, 68 P.2d 50, under such circumstance, if defendants had the permission of the primary appropriator their right to use the water would be good as against the plaintiff. These questions could not be determined in this case because the pri-

mary appropriator is not a party. Nor is it necessary to decide these questions here because defendants are not seeking an adjudication of their right. However, such considerations do have a direct bearing on the sufficiency of the proof to entitle plaintiff to a decree quieting its title as against defendants.

In this case it must also be remembered that the drain, from which the defendants divert their water, and the well complained of, were not dug by the defendants. So that, if a diversion was effected, which violated the plaintiff's rights, such initial diversion was made by the Boise-Kuna Irrigation District, presumably upon the assumption that it had a right so to do. In any litigation which would challenge either the right of the district to interfere with the previous course of the water, in its drainage operations, or its right to reclaim the water and put it to further use, the district must necessarily be made a party.

In an action to quiet title the plaintiff can recover only upon the strength of his own title and not upon the weakness of that of his adversary. Washington State Sugar Company v. Goodrich, 27 Idaho 26, 147 P. 1073; Independence Placer Mining Company, Ltd., v. Hellman, 62 Idaho 180, 109 P.2d 1038; Stickel v. Carter, 63 Idaho 78, 117 P.2d 477; Hunt v. McDonald, 65 Idaho 610, 149 P.2d 792; 44 Am.Jur. 69.

From all these considerations the conclusion is that plaintiff did not sustain the burden of establishing its claimed title. The defendants have sought no affirmative relief. Hence, the fact that the proof may or may not be sufficient to establish title in them does not inure to the benefit of the plaintiff and is no cause for complaint by it.

The judgment for the defendants is, therefore, affirmed.

PORTER and KEETON, JJ., and THATCHER and LOWE, District Judges, concur.