381 P.2d 802

Max BOESIGER and Ruth H. Boesiger, husband and wife, Plaintiffs-Cross-Defendants and Appellants,

v.

Lewis C. FREER, Defendant-Cross-Complainant and Respondent,

v.

Mary E. COX, a widow, Cross-Defendant and Appellant.

No. 8918.

Supreme Court of Idaho.

May 14, 1963.

Francis H. Hicks, Mountain Home, Richards, Haga & Eberle, Boise, for appellants.

Hawley & Hawley, Boise, for appellant Mary E. Cox.

Perce Hall, Mountain Home, Anderson, Kaufman & Anderson, Boise, for respondent.

KNUDSON, Chief Justice.

This action was commenced on February 17, 1959, by appellants, Max Boesiger and wife (hereinafter referred to as Boesiger) against respondent, Lewis C. Freer, seeking restitution and possession of farm lands in Elmore County allegedly belonging to Boesiger.

Freer, as cross-plaintiff, seeks specific performance of an alleged oral agreement entered into with cross-defendant Mary E. Cox (hereinafter referred to as Cox) for the sale and purchase of said farm lands.

From a judgment in favor of respondent Freer, this appeal is taken by appellants, Boesiger and Cox.

On December 20, 1956, Cox, the then owner of the property in issue, entered into a written lease agreement with respondent under the terms of which the subject property was leased to Freer for a term commencing January 1, 1957 and ending January 1, 1958. The lease, inter alia, contains an option right on the part of Freer, as lessee, to renew the lease for an additional year and for two additional terms. It also provides that respondent shall have the first right to purchase the subject premises, if offered for sale, during the period covered by the lease, on the terms offered by the lessor Cox.

During 1957, Cox, with the consent of respondent, sold under contract three acres of the leased property, referred to as Davis Tract, under which contract there remained an unpaid purchase balance of $3000.00

Beginning October 1, 1957, Freer and Cox exchange correspondence relating to a request by Freer for a reduction of rental in the event of an extension of the lease term for the year 1958, and also relating to an offer of sale by Cox. They thereafter orally discussed the subject of sale by telephone, at the dwelling on the subject property, and also at a meeting of the parties at the office of attorney Perce Hall on about February 3, 1958.

The evidence is to some extent conflicting as to what was said by the respective parties during such discussions. Shortly after the meeting at Mr. Hall's office Cox unilaterally signed an "Agreement" bearing date of February 8, 1958, under the terms of which Cox agreed to sell the subject property to Max A. Boesiger, Inc., for the stated sum of $26,500.00 and contained an acknowledgment of having received a down payment of $2000.00. Immediately after signing said agreement Cox left for Texas and returned shortly prior to March 17, 1958. On said last mentioned date Cox executed another "Agreement" under the terms of which Cox agreed to sell the subject property to Max A. Boesiger Real Estate, Inc. for a stated consideration of $16,625.00. Under date of April 8, 1958, Cox executed a warranty deed which in terms conveyed the subject property to Boesiger for a stated consideration of $17,-790.00. It is under said deed that appellant Boesiger claims title to and right of possession of the property involved.

Essentially the assignments of error challenge the sufficiency of the evidence to sustain the findings of fact, conclusions of law and judgment. After thoroughly examining the record, we conclude that each and all of the findings of fact made by the trial court are supported by substantial competent evidence.

One of the principal issues raised by this appeal is whether there has been sufficient

part performance of the oral agreement as to justify the court in regarding the case as being relieved from the operation of I.C. § 9–503 of the Statute of Frauds.

Not only does the doctrine of part performance, under certain circumstances, authorize the taking of a verbal contract out of the operation of said statute, but our statute (I.C. § 9–504) specifically directs that said section (I.C. § 9–503) must not be construed "to abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof." While the doctrine of part performance and § 9–503 each mark a relaxation of the statute of frauds, a further relaxation should not be permitted by failing to question the sufficiency of the act or acts which are relied upon as constituting part performance within the doctrine and said statute.

■ What constitutes part performance must depend upon the particular facts of each case and the sufficiency of particular acts is a matter of law.

In the instant case the acts relied upon by respondent as constituting part performance on his part are (1) improvements made upon the subject property (2) possession under oral contract (3) payment of $619.95 of purchase price, and (4) sale by respondent of his livestock (cows and calves) during December and January in order to raise money with which to make the down payment ($3000.00) as agreed upon, resulting in substantial financial loss to respondent.

■ The contention that improvements made by respondent constitute part performance is only casually mentioned in respondent's brief. Respondent testified that the improvements consisted of "removing some partitions in a barn" which he described as being "more to repair", and "changing some ditches." The trial court did not find that respondent had made any substantial improvements. In order to be considered as constituting part performance of a contract such as is here considered, improvements must be substantial in relation to the value of the property involved. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351.

In its findings the court did not clearly state at what time respondent's possession of the subject property became referable to the agreement of sale. The court did find that "Freer went into possession of the leased premises shortly after December 20, 1956, and has remained in possession of the premises ever since that date." (Par. III of Findings) Possession is also mentioned in Par. VIII of the Findings wherein reference is made to the meeting of Cox and Freer in the office of attorney, Perce Hall, on February 4, 1958, and the court stated "possession of the property was delivered immediately to Freer although

Freer agreed to pay the interest on the mortgage from December 1, 1957, the date considered to be that on which the parties orally reached agreement."

■ Where possession is relied upon as part performance to take the case out of the statute of frauds the taking of the possession is of great importance. In the instant case respondent originally obtained possession under his lease agreement with appellant Cox and his possession was continuous until the time of trial of this case. The general rule applicable in cases where the possession has been so commenced is stated in 81 C.J.S. Specific Performance § 59, p. 546, as follows:

"However, the continuance of a possession assumed or commenced before the making of a contract, under some right or in some capacity other than that created by, or resulting from, such contract, is not such a taking and holding of possession as may, either alone or in connection with other acts, be regarded as part performance of the contract."

■ It does not follow that the taking of possession of property prior to making an oral contract relating thereto will prevent such possession, when continued after the contract is made, from being regarded as an act of part performance thereof. Competent evidence may clearly show that possession, after the making of an oral contract, was definitely referable to the contract. However the possession of land to constitute a part performance of a contract invalid under the statute of frauds, must be actual, notorious and in pursuance of the contract. Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769; Peterson v. Hagaman, 162 Kan. 222, 175 P.2d 118; 49 Am.Jur. 734.

■ In the case before us the district judge stated in his memorandum decision "that he [respondent] is entitled to specific performance because his possession after January 1, 1958, is referable to the oral contract under the evidence * * *." However the court did not find that it was such a possession as constituted part performance.

Referring to the contention that respondent partly performed the oral agreement by paying $619.95 of the purchase price, it is not entirely clear that the trial court considered that respondent did so partly perform. In the findings the court specifically referred to certain payments which had been made by respondent following which the court said:

"which payments resulted in an over-payment of rent for 1957 by the sum of $619.95. It was the intent and understanding of Freer and Cox that there would be an accounting between them to establish the over-payment of rent

due on the lease and it was further understood that any over-payment of rent would apply upon the purchase price of the property."

The language used indicates that the payments aggregating $619.95 were originally considered and made as rental payments. If respondent relied upon said payments as constituting part performance it was his burden to show by clear and convincing evidence that such was a fact. However, assuming that said amount had been paid to apply on the purchase price, such payment would not by itself constitute such part performance as to justify specific performance of the oral contract since it is only a comparatively small part of the purchase price ($25,000.00). Raff v. Baird, 76 Idaho 422, 283 P.2d 927.

The court found that in reliance upon the oral agreement respondent, during December, 1957, and January, 1958, sold approximately 150 head of his cattle in order

"to pay off the mortgage on the cattle and still have enough money left over to make the down payment of $3,000.00 and to make the mortgage payment due to the Federal Land Bank of Spokane on the property."

The evidence clearly sustains the court's finding that the act of selling his cattle was done in reliance upon the oral agreement, however, such act was collateral to the agreement. It is contended that such evidence is convincing that respondent thereby changed his position substantially and brings his case within the rule that

"where a party has so performed, or changed his position in reliance on the contract, that to allow the other party to interpose the statute of frauds as a defense, would perpetrate a fraud on the performing party, and the legal remedy is inadequate, equity will decree specific performance." Anderson v. Whipple, supra.

We adhere to such ruling; however, in view of the fact that the trial court did not determine what loss was in fact suffered by respondent as a result of marketing his cattle when he did, nor whether the legal remedy would be inadequate, we do not feel that such collateral act under the circumstances of this case should be regarded as part performance.

We shall now consider the contention that respondent has substantially changed his position in reliance on the oral contract, along with the applicability of the doctrine of equitable estoppel as against appellant Cox. Respondent strenuously urges that all the elements necessary to equitable estoppel are present in this case. Since granting a rehearing additional briefs have been furnished dealing with the doctrine of equitable estoppel. A proper considera-

tion of respondent's contention requires that it be determined whether the facts necessary to constitute estoppel were proved at the trial.

Equitable estoppel is defined in 19 Am. Jur. 634, § 34, as follows:

"Equitable estoppel or estoppel in pais is a term applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. Any more exact or complete definition than this is difficult to formulate for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. The cases themselves must be looked to and applied by way of analogy rather than rule. Equitable estoppel or estoppel in pais is the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or con-

duct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed."

This Court has, upon a number of occasions, stated the essential elements of equitable estoppel. In Charpentier v. Welch, 74 Idaho 242, 259 P.2d 814, this Court, while discussing estoppel, quoted with approval from 19 Am.Jur. § 42, pp. 642 and 643, as follows:

"The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially."

See also Swanson v. State, 83 Idaho 126, 358 P.2d 387.

The record discloses that under the terms of the lease respondent had the first right to purchase the premises if offered for sale by Cox; that about November 3, 1957, Cox initiated the negotiations for the sale of the land to respondent; respondent shortly thereafter made a counter-offer of purchase which was orally accepted by Cox on November 15, 1957. After Cox returned from Oregon during December, the parties further discussed the sale, "crossed hands and made a deal" as testified by Cox. Shortly thereafter (during December) Cox and respondent went to the Federal Land Bank at Boise to notify the bank that respondent would in the future be making the mortgage payments, and also to request an extension of time on the payment due in December. On February 4, 1958, the parties went to Mr. Hall, an attorney, and requested him to draft a formal contract.

█ Such conduct on the part of Cox undoubtedly was intended to and did convey the impression to respondent that he had an agreement to purchase the subject property. In fact the trial court found that as of January 1, 1958, these parties had a verbal agreement for the sale and purchase of the property and we have hereinbefore stated that such finding of fact is supported by substantial, competent evidence. We therefore conclude that such conduct on the part of Cox establishes the first of the essential elements of estoppel as stated in said rule.

Another essential element is that there must have been an intention, or at least expectation, that such conduct will be acted upon by the other party. The record is convincing that Cox expected respondent to act as a result of her conduct—in fact she assisted him in acting when she went to the Federal Land Bank and took part in notifying the bank of the arrangement they made for respondent to assume the mortgage payments. Cox testified that on February 3, 1958, while enroute with respondent, she procured an abstract and took it to Mr. Hall's office where the written contract was prepared; she further testified that as early as November, 1957, she was advised by letter from respondent "that he would have to carry his cattle over till February before he could make me a payment, and if I would want to go along with that, if I did, then he would buy me out; and I said I would."

The record discloses that after Cox returned from Oregon during December, 1957, the parties discussed the fact that respondent would have to sell his cattle in order to make the $3000.00 down payment and, as the trial court found, "it was understood between them that it would take Freer until about the 1st of February, 1958, to do so."

The record is also convincing that respondent relied upon Cox's conduct as a result of which his position was prejudicially changed. In this connection we quote from the trial court's findings of fact as follows:

"Relying on the agreement Freer commenced during December, 1957, to sell his cattle and continued to sell the same during January, 1958, in order to raise money to comply with his agreement to purchase the property. The cattle were encumbered by a mortgage to the Western Idaho Pca, which mortgage had to be paid first out of the proceeds of sale of the cattle, and it was necessary to sell approximately 150 head of cattle to pay off the mortgage on the cattle and still have enough money left over to make the down payment of $3,000.00 and to make the mortgage payment due to the Federal Land Bank of Spokane on the property. This sale was earlier than would have been normal for such type of sale, and as a result thereof, Freer received substantially less money than he would have realized by a later sale in the normal course of his livestock operations, which resulted in definite substantial financial loss to Freer, although the amount cannot be computed."

It is true that the court did not determine the exact amount of damage respondent suffered by reason of the early sale of his cattle, however, in addition to the foregoing finding that it "resulted in definite substantial financial loss to Freer", the court stated in the memorandum decision that "the court is certain there was a loss involved" also that "in reliance upon the oral contract sold his livestock to his detriment, which loss would be irreparable to him unless the contract is specifically enforced." In response to a question as to how much loss he suffered by the sale of his cattle during December and January, respondent said "at least $10,000.00."

It is clear that after January 1, 1958, respondent remained in possession of the property in reliance upon the purchase agreement. At that time the original term of his lease had expired and there was no understanding on the part of either party that the lease term had been extended nor does either party so contend. The record is convincing that after Cox called respondent by telephone on November 15, 1957, and orally accepted respondent's offer to purchase there were no further discussions regarding the lease. Respondent had no right other than the purchase agreement under which to claim right of possession. Therefore it is obvious that Cox knew and understood that respondent was remaining in possession under the purchase agreement after January 1, 1958.

Under the terms of the lease respondent had the right to renew and the uncontra-

dicted evidence discloses that respondent renewal of the lease early in October, 1957, opened negotiations with Cox regarding a and continued such negotiations until Cox made her offer of sale to respondent. There is merit to respondent's contention that he was prejudiced by reason of the acts of Cox, since he was led to believe that he had an agreement to purchase the property. He therefore acted accordingly and sought no further negotiations concerning renewal of the lease.

The following quoted testimony of respondent discloses his desire to exercise, and willingness to comply with, the purchase privilege granted him under the lease agreement, and is in reference to a conversation had with Cox shortly after he received the "Notice of Eviction", which was served on him about October 28, 1958:

"Q. What was said at that time?

"A. I told her that if there were any possibility that there was room for a question between us on the place and on the price, that I would forego what we had agreed on in the agreement in Mr. Hall's office, and pay the larger amount which she was purported to have received from Mr. Boesiger.

"Q. You offered to meet any other price?

"A. I did."

Cox acknowledges that during the conversation just referred to, respondent stated to her that "I'll give you what anybody else will give you."

In discussing the application of equitable estoppel against a vendor of real property, it is stated in 19 Am.Jur. 746, § 89, as follows:

"The application of the doctrine of equitable estoppel against a vendor, for false representations, does not necessarily depend on his knowledge of such falsity, but may rest on the principle that one who, by representing that a certain state of facts exists, has misled another is precluded from asserting the contrary. * * * *The vendor in an option contract, by agreeing to a modification of the terms of payment, may not mislead the vendee and then, when too late to make other arrangements, refuse to accept the terms agreed upon and defeat the right to exercise the option.*" (Italics supplied)

Respondent further contends that since Cox in fact offered to sell the premises to respondent during the initial term of the lease and he accepted on the terms offered, he thereby actually exercised his option right to purchase; that the trial court found the terms of the sale to be definite and Cox should be estopped to deny respondent's right to purchase.

Cox admits that she took part in the negotiations hereinbefore mentioned and that she and respondent went to Mr. Hall for the purpose of having a contract prepared. Notwithstanding such action on her part, the fact is that within five days after she had been to Mr. Hall's office, when and where the details of the sale to respondent were stated and discussed by both parties, Cox signed an instrument which purported to be an agreement of sale to appellant Boesiger. Within a few hours of signing said instrument, she left for Texas without informing respondent of her dealings with Boesiger or that she had any intention of repudiating her agreement with respondent. There is no showing whatever that she made any attempt to contact respondent or to in any manner notify him not to rely on the sale they had discussed. It was approximately one month later (March 10, 1958) that respondent, having learned that Cox and Boesiger had some dealings relative to the property, promptly called her by telephone. Cox admits that she did not at any time communicate to respondent the details of her purported sale to Boesiger.

The record is convincing that respondent exercised his option right to purchase during the initial term of the lease and although, for reasons already stated, respondent is not entitled to a decree directing that such oral agreement be specifically performed on the theory of part performance, we do conclude that the doctrine of equitable estoppel is applicable in this case. This is in keeping with the rule that equity having obtained jurisdiction of the subject matter of a dispute, will retain it for the settlement of all controversies between the parties with respect thereto and will grant all proper relief whether prayed for or not. (Anderson v. Whipple, supra; Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080; Stivers v. Sidney Mining Co., 69 Idaho 403, 208 P.2d 795; Swanstrom v. Bell, 67 Idaho 554, 186 P.2d 876; Schlieff v. Bistline, 52 Idaho 353, 15 P.2d 726)

It is clear that Cox and respondent entered into a purchase and sale agreement, the terms of which were definite, and in reliance thereon respondent changed his position to his substantial damage and that in order to promote the ends of justice and accomplish that which should be done between the parties, appellant Cox should be and is estopped to deny respondent's right to purchase the subject property in accordance with the terms and conditions which the trial court found and determined to be the agreement between the parties. In the court's memorandum decision it is stated that the agreement is correctly reflected by exhibit No. 11, and a portion of the terms are stated in the court's findings of fact.

By deed dated April 8, 1958, Cox purportedly deeded the premises to Max A. Boesiger personally, although the contract which was executed by Cox as seller, dated March 17, 1958, designated Max A. Boesiger Real Estate, Incorporated, an Idaho Corporation, as the buyer. The court found and the record discloses that "At the time Boesiger first dealt with Cox in February, 1958, he knew Freer was in possession of the premises and made no inquiry of Freer as to his rights in or claims to the property and further knew that Cox was negotiating with Freer for sale of the property to Freer, and prior to March 17, 1958, Boesiger had actually been advised by Freer of Freer's claimed purchase rights."

The court properly concluded that Boesigers are not bona fide purchasers of the property involved and that they hold the title thereto in trust for respondent. This conclusion is supported by the decision in Barton v. Dunlap, 8 Idaho 82, 66 P. 832, wherein this Court quoted with approval from a California case as follows:

"A subsequent purchaser from the vendor, with notice of the agreement on the part of the grantor to convey the title, holds the same in trust for the vendee, and is bound to convey it to him upon payment of the balance of the purchase money due by the agreement."

Having determined that Cox is estopped to deny her agreement with respondent it is unnecessary to consider respondent's contention that respondent, having held over and retained possession of the premises for more than sixty days after the expiration of the term stated in the lease, became entitled to hold under the terms of the lease for another full year retaining the first privilege of purchasing as provided in the option clause of the lease, under the authority of I.C. § 6–303.

This cause is remanded with directions to the district court to enter judgment directing appellant Cox to specifically perform the contract of sale referred to in paragraph VIII of the trial court's findings of fact and set forth in detail in defendant's exhibit No. 11; also decreeing that Boesiger make such reconveyance of the property as will enable Cox regularly to carry out and perform said contract with respondent, and further decreeing that appellant Boesiger has no right, title or interest in the subject property, adverse to respondent's right to purchase under the terms of such contract hereinbefore described. Respondent shall have such time as the trial court determines to be reasonable within which to tender and pay to appellant Cox all sums due and payable to date under the terms of said contract. Respondent shall not be required to pay interest on any sum or sums previously tendered from and after the date on which

such tender was made by respondent to Cox pursuant to said contract. The trial court may receive and consider such additional evidence as it deems necessary in order to determine what tenders have been made and the dates thereof.

No costs allowed.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.