874 P.2d 528

**BEAR ISLAND WATER ASSOCIATION, INC., Plaintiff–Counterdefendant Appellant–Cross Respondent,**

v.

**Lloyd C. BROWN and Shannon Brown, Husband and Wife, Defendants–Counterclaimants Cross Appellants.**

No. 20097.

Supreme Court of Idaho,
Idaho Falls, April 1993 Term.

April 21, 1994.

Rehearing Denied June 22, 1994.

Anderson, Pike & Bush, Idaho Falls, for appellant/cross-respondent. W. Joseph Anderson, argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondents/cross-appellants. Kumen L. Taylor, argued.

1993 OPINION NO. 133, FILED DECEMBER 20, 1993, IS HEREBY WITHDRAWN AND THIS OPINION SUBSTITUTED THEREFOR.

SILAK, Justice.

This appeal involves a dispute over property rights to a well which was mistakenly drilled on the wrong lot. The district court granted a partial summary judgment quieting title to the well in Lloyd and Shannon Brown, the owners of the property on which the well is located. Bear Island Water Association (BIWA) appeals, asserting that the district court should have quieted title to the well in BIWA and granted BIWA an easement to maintain pipelines over the Browns' land to connect the well to BIWA's existing water distribution system. The Browns cross-appeal, contesting the district court's denial of their request for attorney fees. For the reasons set forth below, we affirm the order of partial summary judgment, vacate the order denying the Browns' request for attorney fees and remand to the district court.

## I. FACTS AND PROCEDURAL BACKGROUND

The following facts are undisputed. In 1972, Ray Andrus and members of his family (Andrus) subdivided farm land to create a residential development called Bear Island Estates. In September, 1972, Andrus formed BIWA, a non-profit corporation organized to develop and maintain a culinary and domestic water distribution system for the Bear Island Estates subdivision. Andrus split Bear Island Estates into two divisions and proceeded to subdivide and develop Division 1 into thirty residential lots. A well (Well 1), which was developed on land in Division 2, provided the culinary water supply for the lots in Division 1.

About five years later, on June 1, 1977, Andrus contracted to sell Division 2 to David and Mina Jones (the Joneses). The sales contract also contained the following provision:

PURCHASERS [the Joneses] agree that they will, prior to June 15, 1978, drill and develop a well and culinary water system and will cause the same to be connected with an existing well [Well 1] and water system now located on and serving Bear Island Estates Division No. 1,[1] and that the two wells so connected will have sufficient capacity to provide adequate culinary water to all lots in Divisions No. 1 and No. 2 as platted.

Pursuant to the contract, Andrus deeded Division 2 to the Joneses. On November 15,

---

1. As noted above, Well 1 was actually located on Division 2, and serving the residents of Division 1.

1977, the Joneses granted the Federal Land Bank of Spokane (FLB) a mortgage on Division 2. The Joneses granted a second mortgage on Division 2 to Andrus.

The Joneses hired Ellsworth Engineering, Inc., to do platting and engineering work on Division 2, including designing a water distribution system to provide the culinary water needed by residents of both Divisions 1 and 2. When the plat of Division 2 was completed, it consisted of a twenty-nine lot residential subdivision with a separate 100 square foot lot designated as the "Well Lot." The Well Lot was platted so that the pre-existing Well 1 was located on the Well Lot. In accordance with the Andrus/Jones contract, the plan of the water distribution system called for the development of a second well (Well 2) to be connected to Well 1. The plat of Division 2 specified that Well 2 would also be located on the Well Lot. The Joneses had Well 2 drilled in February of 1979, but it was mistakenly drilled not on the Well Lot, but thirty-five feet onto one of the residential lots, Lot 9, located adjacent to the Well Lot. Although the hole for Well 2 was drilled at this time, the diversion works for the well (the pump, electrical supply, and connecting pipelines) were not installed until about nine years later, in 1987 and 1988. The hole for Well 2 remained capped and unused until that time.

In November of 1984, due to the Joneses' default, FLB foreclosed on the Joneses' mortgage. On January 14, 1986, a sheriff's deed conveyed to FLB the mortgaged property, which included the Well Lot, Lot 9, and lots 6, 7 and 8.

During this time, FLB was informed by the Idaho Department of Health and Welfare that water associations should have fee simple ownership of the land from which their water supply is diverted. FLB subsequently negotiated with BIWA for the transfer of the Well Lot to BIWA. On April 22, 1987, FLB granted a warranty deed to BIWA conveying the Well Lot. Neither FLB nor BIWA were aware that Well 2 had been drilled on Lot 9 instead of the Well Lot. Accordingly, when BIWA acquired ownership of the Well Lot, it believed it was acquiring ownership of Well 2. However, the deed from FLB to BIWA did not include any portion of Lot 9, where Well 2 was located, nor did the deed grant an easement or any other right to BIWA to access or use any portion of Lot 9.

On September 17, 1987, FLB quitclaimed lots 6, 7, 8 and 9 to Jefferson County to satisfy back taxes and other assessments. Thus, after September 17, 1987, BIWA owned the Well Lot which contained Well 1 and the water distribution system, and Jefferson County owned Lot 9, which contained the as yet unconnected and unused Well 2.

In November, 1987, BIWA entered onto Lot 9 and dug a trench to install pipes connecting Well 2 to the water distribution system located on the Well Lot. In March, 1988, BIWA entered onto Lot 9 and deepened the hole for Well 2. On September 6, 1988, BIWA applied to the Idaho Department of Water Resources for a permit to appropriate water from Well 2 for the domestic culinary needs of the residents in the Bear Island Estates subdivision. In about November 1988, BIWA completed installation of the diversion works for Well 2, and the well became operational. On February 3, 1989, the Department of Water Resources approved BIWA's application for a water permit. One of the conditions placed on approval of BIWA's application stated, "[t]he issuance of this permit in no way grants any right-of-way or easement across the land of another."

In September 1989, Jefferson County conveyed Lot 9 to Lloyd and Shannon Brown by quitclaim deed. Prior to purchasing, the Browns inspected Lot 9 and observed that Well 2, which was then in operation, was located on Lot 9. The Browns searched Jefferson County records to ascertain whether a prior or conflicting interest in Well 2 had been recorded. Finding no recorded interest in Well 2, the Browns proceeded to purchase Lot 9. When the Browns purchased Lot 9, a water line crossed the lot carrying irrigation water to Lot 9 and other lots in the subdivision. After purchasing Lot 9, the Browns disconnected this irrigation line so that it would no longer service the other lots, and they began using the line to irrigate Lot 9 and the adjacent Well Lot. BIWA contacted the Browns and asked them

to reconnect the irrigation line to the other properties and to stop irrigating the Well Lot. The Browns refused both requests. The Browns further asserted ownership of Well 2 and demanded that BIWA remove its personal property (the pump, pipe, and electrical supply line) from the well.

In September, 1991, BIWA filed this suit against the Browns, seeking to quiet title to Well 2 in BIWA, and an easement across the Browns' property so that BIWA could maintain the pipelines connecting Well 2 to BIWA's water distribution system on the Well Lot. Additionally, BIWA requested the district court to enjoin the Browns from irrigating the Well Lot and to order them to reconnect the irrigation line that had supplied irrigation water to the other lots. The Browns counterclaimed asserting that they owned Well 2, that BIWA had trespassed upon Lot 9 to install the diversion works in Well 2, and therefore BIWA should be ordered to remove the diversion works. The Browns asked the district court to quiet title to Well 2 in them. After discovery, both parties moved for summary judgment.

The district court granted partial summary judgment in favor of the Browns, concluding that, as a matter of law, BIWA had failed to establish any right or interest in Well 2, and that title to the well should be quieted in the Browns. Specifically, the court's order granting partial summary judgment stated that "title to the well ... is quieted in defendants as against any and all claims by plaintiff and defendants are hereby declared to be the fee simple owners of the same, including the exclusive right to appropriate water therefrom." The court ruled that there were genuine issues of fact regarding the property rights in the irrigation line, thus summary judgment was denied as to that issue. BIWA filed motions to amend the judgment, and the Browns sought an award of attorney fees from BIWA. The district court denied the Brown's motion for attorney fees and BIWA's motions to amend the judgment; however, it certified the partial summary judgment as a final judgment pursuant to I.R.C.P. 54(b), from which an appeal could be taken. BIWA filed a timely appeal from the partial summary judgment, and the Browns

cross-appealed from the district court's denial of their motion for attorney fees. The Browns also seek attorney fees on appeal.

## II. ANALYSIS

This appeal poses two questions: (1) did the district court err by granting partial summary judgment quieting title to Well 2 in the Browns; and (2) did the district court err in denying the Browns' motion for attorney fees.

### A. SUMMARY JUDGMENT QUIETING TITLE TO WELL 2 IN THE BROWNS.

 In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the district court in ruling on the motion for summary judgment. *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 781, 837 P.2d 805, 807 (1992). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). Summary judgment shall be granted if the court determines that "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Bonz,* 119 Idaho at 541, 808 P.2d at 878. The fact that the parties have filed cross-motions for summary judgment does not change these standards. "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)).

BIWA asserts that summary judgment quieting title to Well 2 in the Browns was improper because the facts presented by BIWA conclusively proved, or at least created a genuine issue, that BIWA had acquired property rights in Well 2. Specifically,

BIWA contends the facts in the record show that: (1) BIWA acquired an ownership interest in Well 2; (2) BIWA acquired an easement by implication to use Well 2 to appropriate water for BIWA's culinary water system; and (3) the Browns were not bona fide purchasers of Well 2 because they had notice of BIWA's interest in the well. We address each of these issues in turn.

1. *Ownership of Well 2.* In ruling on BIWA's motion to amend the findings of fact and conclusions of law, the district court concluded that BIWA had failed to establish any ownership interest in Well 2 either by written conveyance or by operation of law. On appeal, BIWA challenges this conclusion of the district court.

■ Idaho's Statute of Frauds, I.C. § 9–503, states that "[n]o estate or interest in real property ... can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing." Although it is undisputed that BIWA never acquired an interest in the real property surrounding Well 2 by a written conveyance which would satisfy the requirements of the Statute of Frauds, BIWA asserts that it nevertheless acquired an ownership interest in Well 2. To support this argument, BIWA cites the fact that Ray Andrus and David Jones both submitted affidavits in which they stated that during their respective periods of ownership they considered BIWA to be the owner of the culinary water system. BIWA asserts that these affidavit statements of Andrus and Jones, coupled with the fact that BIWA made valuable improvements to the Well 2 property by installing and operating the well, establish that BIWA became the owner of Well 2.

■ As an exception to the strict application of the Statute of Frauds, the doctrine of part performance is well-established in Idaho. I.C. § 9–504; *Jolley v. Clay,* 103 Idaho 171, 177, 646 P.2d 413, 419 (1982); *Hoffman v. S V Co.,* 102 Idaho 187, 191, 628 P.2d 218, 222 (1981); *Roundy v. Waner,* 98 Idaho 625, 570 P.2d 862 (1977); *Southern v. Southern,* 92 Idaho 180, 438 P.2d 925 (1968); *Boesiger v. Freer,* 85 Idaho 551, 381 P.2d 802 (1963); *Reynolds Irrigation Dist. v. Sproat,* 70 Idaho 217, 222, 214 P.2d 880, 882 (1950). Under the doctrine of part performance, when an agreement to convey real property fails to meet the requirements of the statute of frauds—as in this case where the alleged agreement was not reduced to writing—the agreement may nevertheless be specifically enforced when the purchaser has partly performed the agreement. *Id.* Before an oral agreement to convey land will be specifically enforced, the underlying contract must be proven by clear and convincing evidence. *Anderson v. Whipple,* 71 Idaho 112, 123, 227 P.2d 351, 358 (1951). Further, the proof must show that the contract is complete, definite and certain in all its material terms, or that it contains provisions which were capable in themselves of being reduced to certainty. *Id.* The material terms which must be identified in a contract to convey land include the parties to the contract, the subject matter of the contract, the price or consideration, and a description of the property. *Hoffman,* 102 Idaho at 190, 628 P.2d at 221.

"What constitutes part performance must depend upon the particular facts of each case and the sufficiency of particular acts is a matter of law." *Boesiger,* 85 Idaho at 556, 381 P.2d at 804. "The most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined." *Roundy,* 98 Idaho at 629, 570 P.2d at 866 (quoting *Barton v. Dunlap,* 8 Idaho 82, 92, 66 P. 832, 836 (1901)). The acts constituting part performance must be proven by clear and convincing evidence, *Boesiger,* 85 Idaho at 558, 381 P.2d at 805, and they must also be definitely referable to the alleged oral contract, *Boesiger,* 85 Idaho at 557, 381 P.2d at 805; *Roundy,* 98 Idaho at 629, 570 P.2d at 866.

In proving that possession is referable to the alleged oral contract, the time of taking possession is significant:

[T]he continuance of a possession assumed or commenced before the making of a contract, under some right or in some capacity other than that created by, or resulting from, such contract, is not such a taking

and holding of possession as may, either alone or in connection with other acts, be regarded as part performance of the contract.

*Id.* Improvements, in order to constitute part performance, must be substantial in relation to the value of the property. *Boesiger,* 85 Idaho at 556, 381 P.2d at 804.

The doctrine of part performance is predicated on the existence of an agreement to convey land, in this case an alleged oral agreement, which is then partially performed. I.C. § 9–504. The oral agreement, to be specifically enforced by operation of the doctrine of part performance, must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty. BIWA has failed to present evidence showing the existence of an oral contract to convey Well 2 to BIWA. Andrus and Jones stated only that they considered BIWA the owner of the "water system." These statements are not supported by any testimony or evidence of how or when title was purportedly transferred to BIWA. Nor do the statements adequately describe the real property which was purportedly transferred. Andrus and Jones did not state, and BIWA has not directed our attention to any evidence from which we can infer, that they ever entered an oral agreement to convey Well 2 to BIWA. (In fact, Andrus could not have agreed to convey Well 2 to BIWA because when he owned the property, Well 2 did not yet exist, and its future location had not yet been determined.)

Uncontroverted evidence in the record, moreover, shows that Jones never orally agreed to convey the property surrounding Well 2 to BIWA. Documentary evidence in the record shows that while Jones owned Division 2, BIWA understood and believed that Jones had title to the property where the wells were located, and that BIWA needed to enter into negotiations with Jones in order to acquire title to that property. There is no evidence that BIWA ever negotiated terms of conveyance with Jones. It is also undisputed that later, after FLB had acquired title to the property from Jones, BIWA deemed it necessary to purchase the Well Lot from FLB in order to acquire title to the property where the water system was located. The only reasonable inference that can be drawn from the record is that neither Andrus nor Jones ever reached an agreement with BIWA, oral or otherwise, to convey the real property on which the wells were located, and further, that BIWA did not believe it was the owner of the well properties while either Andrus or Jones owned Division 2. There can be no part performance of an agreement which was never made.

BIWA has also failed to present evidence demonstrating that its possession of and improvements to the water system are definitely referable to such an alleged oral contract. Uncontroverted evidence shows that BIWA controlled and operated the water system during the time when its representatives admittedly knew that BIWA did not have title to the Well Lot. Further, BIWA has asserted that it believed it acquired the property where Well 2 is located when it acquired the Well Lot, and it is clear that BIWA made no improvements to Well 2 until after it obtained title to the Well Lot (Jones did the initial drilling and casing). Thus, BIWA's improvements to the property surrounding Well 2 are not referable to an oral contract with Andrus or Jones, but to its mistaken belief that it acquired Well 2 when it purchased the Well Lot.

BIWA has failed to present evidence from which a jury could reasonably find the existence of an oral contract between either Andrus or Jones and BIWA to convey the real property on which Well 2 is located, or that BIWA's improvements to the Well 2 property were definitely referable to such a contract. Accordingly, the district court did not err in concluding that BIWA had failed to establish any ownership interest in Well 2.

■ BIWA also asserts that it acquired ownership of Well 2 as a third party beneficiary of that portion of the Andrus/Jones contract of sale which provided that a second well would be drilled and connected to the existing water distribution system. BIWA claims that after Jones partly performed this contract by drilling Well 2, he "turned over" the well to BIWA, who completed perfor-

mance by developing the well and connecting it to the existing water system. BIWA contends that based on these facts, it acquired ownership of Well 2.

The cases which BIWA cites do not support BIWA's argument that a third party beneficiary of a service contract obtains a real property interest in the property where the service is to be performed. The provision of the Andrus/Jones contract on which BIWA relies did not purport to convey any interest in real property. It did not even specify the property where the second well was to be drilled, only that the Joneses were to drill a second well and connect it to the existing water system. Even if BIWA is presumed to be a third party beneficiary of the Andrus/Jones second well agreement, the only rights BIWA would have acquired as a third party beneficiary would have been to recover damages for the Joneses' failure to perform the contract. Because the provision of the Andrus/Jones contract on which BIWA relies did not purport to convey any interest in land, BIWA's claim of ownership as a third party beneficiary of the Andrus/Jones contract is misplaced. In summary, we reject BIWA's claim of ownership of Well 2 under both its part performance and third-party beneficiary theories. The district court did not err in granting partial summary judgment to the Browns on this issue.

■ BIWA also asserts that the district court erred in its order granting partial summary judgment because it not only quieted title to Well 2 in the Browns, it also purported to grant the Browns the exclusive right to appropriate water from the well. BIWA correctly asserts that it was beyond the jurisdiction of the district court to adjudicate any water rights of the parties. The right to appropriate water is a real property right separate and apart from the property rights in the land from which the water has been diverted. Idaho Code § 42–1404 provides the following with respect to private actions for adjudication of water rights:

(1) Any claimant may file suit in the district court for the county in which the point of diversion or place of use of the claimed right is located for the purpose of adjudicating rights to the use of water from any water system for which a general adjudication has not been commenced or completed. The claimant shall name as defendants the director [of the Idaho Department of Water Resources] and all claimants of rights to the use of water from the water system whose joinder is necessary to resolve the dispute over rights to the use of water from the water system. The claimant shall also publish notice of the action in the manner specified in subsection (2)(b) of section 42–1408A, Idaho Code.

It is clear that while the parties to this action filed claims to adjudicate their respective rights to the real property comprising Well 2, neither party has filed an action for adjudication of any water rights in compliance with the requirements of section 42–1404. In any event, had the parties filed a private action for adjudication of their water rights, this district court would not have had jurisdiction to perform such an adjudication. I.C. § 42–1404(1) prevents claimants from filing private actions to adjudicate water rights which are within the scope of a general adjudication that has already been commenced. *Walker v. Big Lost River Irr. Dist.*, 124 Idaho 78, 81, 856 P.2d 868, 871 (1993). It is clear that the water rights which the Browns and BIWA dispute are within the scope of the general Snake River Basin Adjudication (SRBA). "[J]urisdiction to resolve all of the water rights claims within the scope of the general adjudication is in the SRBA district court only." *Id.* Thus, the district court in this case would have lacked subject matter jurisdiction to adjudicate the parties' water rights even if they would have properly filed a private action for such an adjudication. Because adjudication of water rights was not within the scope of this action, it was improper for the district court's order to contain language purporting to grant the Browns the exclusive right to appropriate water from Well 2. Accordingly, we vacate that portion of the district court's order granting the Browns "the exclusive right to appropriate water" from Well 2.

■ *2. Easement Interests in Well 2.* BIWA asserts as an alternate theory that it acquired an implied easement to use Well 2

to appropriate water for the benefit of Bear Island Estates. BIWA contends that the doctrine of implied easement from prior use and the doctrine of implied easement by necessity are both applicable under the facts of this case. To establish an easement by implication from prior use, the party seeking to establish the easement must demonstrate three essential elements: (1) unity of title or ownership and subsequent separation by grant of the dominant estate; (2) apparent continuous use long enough before conveyance of the dominant estate to show that the use was intended to be permanent; and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate. *Close v. Rensink*, 95 Idaho 72, 76, 501 P.2d 1383, 1387 (1972); *Davis v. Gowen*, 83 Idaho 204, 210, 360 P.2d 403, 406–07 (1961).

■ In this case, it is clear from the record that the first element is satisfied. Unity of title existed in Andrus, Jones and finally FLB, all of whom successively owned both the Well Lot and Lot 9 at the same time. In April of 1987, FLB severed ownership of title by conveying the Well Lot to BIWA and retaining ownership of Lot 9. However, BIWA has failed to create a genuine issue with respect to the two remaining essential elements. There is no evidence of apparent continuous use of Well 2, either by FLB or by BIWA with FLB's permission, prior to the severance of title. Although the hole for Well 2 was partially drilled in February of 1979, it is undisputed that construction was never completed and the well did not become operational until November of 1988. BIWA did not apply for a permit to use Well 2 to appropriate water until eighteen months after the severance. Thus, there was no apparent continuous use of Well 2 before ownership of the two estates was severed in April of 1987.

Nor has BIWA introduced any evidence to show that use of Well 2 is reasonably necessary to the proper enjoyment of the dominant estate. BIWA has not presented any facts to show why it cannot simply drill another well on the Well Lot, as was originally intended, and transfer the diversion works it installed on Well 2 to that well. Of course

construction of a new well would involve some expense, but the desire to avoid that expense does not make continued use of Well 2 on Lot 9 reasonably necessary.

■ BIWA has also failed to present facts which would support creation of an easement implied by necessity. To establish such an easement, BIWA must show: (1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement. *Davis*, 83 Idaho at 210, 360 P.2d at 406–07; *Cordwell v. Smith*, 105 Idaho 71, 77–78, 665 P.2d 1081, 1087–88 (Ct.App.1983). For the same reasons as noted above, the only reasonable inference that can be drawn from the record is that use of Well 2 was not needed at the time of severance. Further, in light of our holding above—that BIWA failed to present evidence to show that an easement to use Well 2 is reasonably necessary—it is clear that BIWA has failed to make the even weightier showing of a great present necessity for the easement.

Because BIWA has failed to create a genuine issue as to whether it is entitled to an easement by implication or necessity, the district court did not err in granting summary judgment to the Browns on those issues.

■ 3. *Bona Fide Purchaser Status of the Browns.* BIWA asserts that the Browns had notice of BIWA's unrecorded ownership or easement interests in Well 2 before they purchased Lot 9, and therefore the Browns are not bona fide purchasers in good faith. It is true that the Browns cannot use Idaho's recording statute, I.C. § 55–812, to defeat a prior unrecorded interest which BIWA had in Well 2, if the Browns had prior actual or constructive notice of that interest. *Langroise v. Becker*, 96 Idaho 218, 220, 526 P.2d 178, 180 (1974) (one who has notice that an unrecorded interest exists cannot be a bona fide purchaser in good faith, as provided by I.C. § 55–812). However, even assuming facts in the light most favorable to BIWA—that the Browns had notice of BIWA's use of Well 2 before the Browns purchased Lot 9—the Brown's prior notice

does not create any real property right in BIWA. As the above analysis concludes, BIWA has failed to show that the record contains any genuine issue of material fact with respect to its asserted fee ownership or easement interests. The district court's ruling regarding this theory is likewise correct.

## B. ATTORNEY FEES BELOW.

After the district court granted the Browns partial summary judgment with respect to ownership of Well 2, the Browns requested an award of attorney fees on the grounds that BIWA pursued its claims to Well 2 frivolously, unreasonably and without foundation. After a hearing, the district court denied the Browns' motion. The Browns have cross-appealed, asserting that the district court abused its discretion by refusing to award them attorney fees below.

■ Rule 54(e)(1) of the Idaho Rules of Civil Procedure provides that "[i]n any civil action the court may award reasonable attorney fees to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract." Rule 54(d)(1)(B) provides that in determining which party is the prevailing party and entitled to costs and attorney fees, the district court is required to consider the final judgment or result of the action in relation to the relief sought by the respective parties, including whether there were multiple claims and issues between the parties, and the extent to which each party prevailed upon each of such issues or claims. Because the district court's order of partial summary judgment constituted a final judgment with respect to some, but not all, of the claims raised by the parties, the district court's ruling on the issue of costs and attorney fees was premature. Not until the parties' remaining claims are finally adjudicated will the district court be able to determine who is a prevailing party and entitled to an award of costs and fees, considering the final judgment or result of the action in relation to the various claims and issues raised by the parties, and the extent to which each party prevailed upon each of such issues or claims. *See Magic Valley Radiology Associates, P.A. v. Professional Business Services, Inc.,* 119 Idaho

558, 563, 808 P.2d 1303, 1308 (1991); *Des-Fosses v. DesFosses,* 122 Idaho 634, 638–39, 836 P.2d 1095, 1099–1100 (Ct.App.1992). Accordingly, we vacate the district court's order denying the Browns' request for attorney fees.

## C. ATTORNEY FEES ON APPEAL.

■ The Browns have requested an award of attorney fees on appeal. Attorney fees to the prevailing party on appeal are appropriate when the Court is "left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). BIWA's arguments asserting ownership of the property surrounding Well 2 by virtue of part performance and third party beneficiary status were wholly unfounded. To support its claims to easement rights in Well 2, BIWA asserted below and on appeal that at the time of the conveyance to Jefferson County, Well 2 was connected to the water system and in use. This factual assertion, essential to BIWA's easement claim, was clearly incorrect, and to pursue an appeal of the easement issue in reliance on this incorrect factual assertion was frivolous and unreasonable. Without this erroneous representation of the facts, BIWA's arguments for easement rights were clearly without foundation. Accordingly, attorney fees are awarded against BIWA on appeal. This award of fees applies only to those fees incurred by the Browns in defending against BIWA's appeal, not to those fees which the Browns incurred in pursuing their cross appeal.

## CONCLUSION

The district court did not err in granting partial summary judgment quieting title to Well 2 in the Browns, and that judgment is affirmed. We vacate that portion of the order granting partial summary judgment which purported to grant the Browns the right to appropriate water from Well 2. We also vacate the district court's order denying the Browns' request for attorney fees.

Costs are awarded to the Browns on appeal. Attorney fees are awarded to the Browns with respect to BIWA's appeal pursuant to I.A.R. 40 and 41.

McDEVITT, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.